**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALMA AND GREGORY RUSH,<br><br>    Plaintiff,<br>        v.<br><br>PORTFOLIO RECOVERY<br>ASSOCIATES, LLC,<br><br>    Defendant. | Hon. Freda L. Wolfson<br>Civil Action No.: 12-cv-02276-FLW-DEA |

**PORTFOLIO RECOVERY ASSOCIATES, LLC's MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

On the Brief:

Thomas R. Dominczyk, Esq.
Donald S. Maurice, Jr., Esq.

MAURICE & NEEDLEMAN, P.C.
Attorneys for Defendant
Portfolio Recovery Associates, LLC
5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822
(908) 237-4550

Date: March 22, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. 2

STATEMENT OF FACTS ................................................................................... 1

LEGAL ARGUMENT ........................................................................................ 4

    STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT ...................... 4

    APPLICATION OF THE FDCPA ........................................................................ 5

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692d(5) CLAIM BECAUSE PRA DID NOT CAUSE THEIR TELEPHONE TO RING
    REPEATEDLY OR CONTINUOUSLY WITH THE INTENT TO ANNOY OR ABUSE
    THEM. .............................................................................................................. 7

    THE COURT SHOULD DISMISS PLAINTIFFS' §1692d CLAIM AS A MATTER OF
    LAW, BECAUSE A PHONE CALL DOES NOT HAVE THE NATURAL CONSEQUENCE
    OF HARASSING, ANNOYING OR OPPRESSING A PERSON. ......................... 14

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692c(a)(1) CLAIM BECAUSE PRA DID NOT CALL IN CONNECTION WITH THE
    COLLECTION OF A DEBT PRIOR TO 8:00 AM. .............................................. 16

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692c(a)(2) CLAIM BECAUSE PRA DID NOT CALL IN CONNECTION WITH THE
    COLLECTION OF A DEBT AFTER IT KNEW THAT PLAINTIFFS WERE
    REPRESENTED BY AN ATTORNEY. ............................................................. 17

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692c(c) CLAIM BECAUSE PRA DID NOT CALL PLAINTIFFS IN CONNECTION WITH
    THE COLLECTION OF A DEBT AFTER IT RECEIVED A CEASE & DESIST LETTER
    FROM PLAINTIFF'S ATTORNEYS. ............................................................... 19

    ALTERNATIVELY, JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON
    THEIR 15 U.S.C. §§ 1692c(a)(1), c(a)(2) and c(c) CLAIMS BECAUSE PRA DID NOT
    COMMUNICATE WITH THEM. ...................................................................... 21

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692c CLAIMS BECAUSE EVEN IF DEFENDANT VIOLATED 15 U.S.C. § 1692c IT
    WAS UNINENTIONAL AND RESULTED FROM A BONA FIDE ERROR
    NOTWITHSTANDING THE MAINTENANCE FO PROCEDURES REASONABLY
    ADAPTED TO AVOID ANY SUCH ERROR. .................................................... 23

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §
    1692f CLAIM BECAUSE PRA DID NOT USE UNFAIR AND UNCONSCIONABLE
    MEANS TO COLLECT A DEBT. ..................................................................... 26

    JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR INVASION OF
    PRIVACY CLAIM BECAUSE PRA DID NOT ENGAGE IN AN INTRUSION THAT
    WOULD BE HIGHLY OFFENSIVE TO A REASONABLE PERSON. ................... 28

    CONCLUSION ............................................................................................... 31

i

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................................ 4, 5

Bey v. Daimler Chrysler Servs., No. 04-6186, 2006 U.S. Dist. LEXIS 8261 (D.N.J. Feb. 15, 2006) ........................................................................................................................................ 11

Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335 (App. Div. 1982)....................... 27

Brandt v. I.C. Sys., Inc., No. 8:09-cv-126, 2010 U.S. Dist. LEXIS 14588 (M.D. Fla. Feb. 19, 2010) ........................................................................................................................................ 9

Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006) ....................................................... 6

Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294 (3d Cir. 2008) ............................... 6

Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223 (D. Kan. 2011) ................................ 9, 12, 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .................................................................. 16, 17, 19

Chalik v. Westport Recovery Corp., 677 F. Supp. 2d 1322 (S.D. Fla. 2009)............................... 27

Chavious v. CBE Group, Inc., 2012 U.S. Dist. LEXIS 4362 (E.D.N.Y. Jan. 12, 2012) .............. 11

Clark v. Capital Credit & Collection Servs., 460 F.3d 1162 (9th Cir. 2006) ................................ 6

Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993).......................................................................... 6

Cox v. Hilco Receivables, L.L.C., 726 F. Supp. 2d 65 (N.D. Tex. 2010) .................................... 27

Cozmyk v. Prompt Recovery Services, Inc., 851 F. Supp. 2d 991 (S.D.W. Va. 2012)............... 22

Fausto v. Credigy Servs. Corp., 598 F. Supp. 2d 1049 (N.D. Cal. 2009).................................... 29

Gray v. York Newspapers, 957 F.2d 1070 (3d Cir. 1992)........................................................... 4, 5

Graziano v. Harrison, 763 F. Supp. 1269 (D.N.J. 1990) ....................................................... 7, 15

Graziano v. Harrison, 950 F.2d 107 (3d Cir. 1991)................................................................. 7, 18

Griffiths v. Sentry Credit, Inc., 2011 U.S. Dist. LEXIS 91386 (D. Or. Aug. 11, 2011) ............... 9

Harvey v. Great Seneca Fin. Corp., 453 F.3d 324 (6th Cir. 2006) ......................................... 14, 15

Hennessey v. Coastal Eagle Point Iol Co., 129 N.J. 81 (1992) .................................................... 27

Jeter v. Credit Bureau, 760 F.2d 1168 (11th Cir. 1985) ............................................................ 7, 15

Joseph v. J.J. MacIntyre Cos., LLC, 238 F. Supp. 2d 1158 (N.D. Cal. 2002)............................... 9

Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117 (D. Nev. 2008)........................... 8

Kleiman v. Equable Ascent, 2013 U.S. Dist. LEXIS 1002 (C.D. Cal., Jan. 3, 2013) ................. 29

Kuhn v. Account Control Tech., Inc., 856 F. Supp. 1443 (D. Ore. 1994) ...................................... 9

Marseglia v. JP Morgan Chase Bank, 750 F. Supp. 2d 1171 (S.D. Cal., 2010) ........................... 28

Martin v. Select Portfolio Serving Holding Corp., 2008 U.S. Dist. LEXIS 16088 (S.D.Ohio Mar. 3, 2008) ................................................................................................................................. 14

Marx v. General Revenue Corp., 668 F.3d 1174 (10th Cir. 2011) .............................................. 21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)................... 5, 16, 17, 19

Millsap v. CCB Credit Servs., Inc., No. 07-11915, 2008 U.S. Dist. LEXIS 110149 (E.D. Mich. Sept. 30, 2008) ..................................................................................................................... 11

Nigro v. Mercantile Adjustment Bureau, LLC, 2013 U.S. Dist. LEXIS 34178 (W.D.N.Y. Mar. 11, 2013) ................................................................................................................................. 9

Oppenheim v. I.C. Sys., 695 F. Supp. 2d 1303, 1310 (M.D. Fla., 2010) .................................... 28

Oppong v. First Union Mortg. Corp., 326 Fed. Appx. 663 (3d Cir. 2009).................................... 6

Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326 (D.N.J. 2009) ...................................... 4

Podobnik v. United States Postal Serv., 409 F.3d 584 (3d Cir. 2005)............................. 16, 17, 19

Pugliese v. Prof'l Recovery Serv., Inc., No. 09-12262, 2010 U.S. Dist. LEXIS 64111 (E.D. Mich. June 29, 2010) ........................................................................................................... 9

Rayl v. Moores, 2010 U.S. Dist. LEXIS 115061 (S.D. Ind., Oct. 28, 2010).................................. 22
Regan v. Law Offices, No. 08-5923, 2009 U.S. Dist. LEXIS 112046 (E.D. Pa. Dec. 1, 2009)... 15
Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051 (C.D. Cal. 2009) ...... 29
Rosenau v. Unifund Corp., 539 F.3d 218 (3d Cir. 2008) ................................................................ 7
Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 U.S. Dist. LEXIS 90681 (E.D. Mich. Sept. 30,
    2009) ............................................................................................................................................. 10
Seaworth v. Messerli, 2010 U.S. Dist. LEXIS 143455 (D. Minn. Sept. 7, 2010) ........................ 22
Shand-Pistilli v. Prof'l Account Servs., 2011 U.S. Dist. LEXIS 64446 (E.D. Pa. June 16, 2011) 8,
    9
Smith v. Capital One Fin. Copr., 2012 U.S. Dist. LEXIS 664454 (N.D. Cal., May 11, 2012).... 29
Stuart v. AR Res., Inc., 2011 U.S. Dist. LEXIS 27025 (E.D. PA. 2011, Dec. 23, 2000)............. 29
Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301 (M.D. Fla. 2010) .......................................... 10
Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d. 1135 (D. Kan. 2004) .................................. 11
Wilfong v. Persolve, LLC, 2011 U.S. Dist. LEXIS 71068 (D. Ore., June 2, 2011).................... 22
Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) .................................................. 5
Wilson., 225 F.3d at 354 .............................................................................................................. 5, 7
Worsham v. Acct. Receivables Mgmt., Inc., 2011 U.S. Dist. LEXIS 134870, aff'd 2012 U.S.
    App. LEXIS 23491 (D. Md., Nov. 22, 2011) ............................................................................. 21
Zortman v. J.C. Christensen & Associates, Inc., 870 F. Supp. 2d 694 (D. Minn. 2012)............. 22

**Statutes**

15 U.S.C. § 1692 .............................................................................................................................. 1
15 U.S.C. § 1692a(2) ........................................................................................................... 5, 23, 26
15 U.S.C. § 1692a(3) ........................................................................................................................ 5
15 U.S.C. § 1692a(6) ........................................................................................................................ 5
15 U.S.C. § 1692a(e) ........................................................................................................................ 6
15 U.S.C. § 1692c(a)(1) ............................................................................................................ 16, 21
15 U.S.C. § 1692c(a)(2) ................................................................................................... 17, 18, 19 21
15 U.S.C. § 1692c(c) ........................................................................................................ 18, 19, 20, 21
15 U.S.C. § 1692a(2) ...................................................................................................................... 21
15 U.S.C. § 1692c ...................................................................................................................... 21, 23
15 U.S.C. § 1692c(a)(1) .............................................................................................................. 23, 25
15 U.S.C. § 1692c(a)(2) .................................................................................................................. 25
15 U.S.C. § 1692c(c) ................................................................................................................. 25, 26
15 U.S.C. § 1692c(d) ........................................................................................................................ 5
15 U.S.C. § 1692d .................................................................................................................... passim
15 U.S.C. § 1692d(5) ............................................................................................................... passim
15 U.S.C. § 1692f ...................................................................................................................... 23, 27

**Other Authorities**

53 Fed. Reg. 50097 ......................................................................................................................... 21

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................................ 4
Fed. R. Civ. P. 56(c)(2) .................................................................................................................... 5
Fed. R. Civ. P. 56(c)(4)..................................................................................................................... 4
Fed. R. Civ. P. 56(e) ......................................................................................................................... 5

**Treatises**

Restatement of Torts, Second, § 652B...................................................................... 27, 28

## **PORTFOLIO RECOVERY ASSOCIATES, LLC's MEMORANDUM** **OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Portfolio Recovery Associates, LLC ("PRA"), through its counsel, Donald S. Maurice, Jr., Esq. and Thomas R. Dominczyk, Esq., respectfully requests the Court grant PRA's Motion for Summary Judgment and enter judgment in favor of PRA.  In support thereof, PRA avers the following:

## **STATEMENT OF FACTS**

On April 16, 2012, Plaintiffs filed a complaint alleging PRA that violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, et seq. The basis for their complaint are unspecified telephone calls they received between December 2011 and April 2012. Plaintiffs allege that PRA made these telephone calls.

Plaintiffs never spoke with a PRA representative. It is no surprise then that they do not complain of any communication whose content was abusive, harassing, deceptive or misleading.

In the one year prior to the filing of Plaintiffs' complaint, PRA made 39 telephone calls to Plaintiff Alma Rush (hereinafter referred to as "Alma"). See Declaration of PRA's Representative, (hereinafter the "PRA Declaration"), ¶17 and Exhibit A attached thereto. The purpose of the calls was to collect an unpaid obligation due from Alma to PRA. Id.

PRA's calls were infrequent. As the table below demonstrates, PRA called Alma nine times in January of 2012. None of the calls were answered.

PRA called Alma four times in December 2011, and none of the calls were answered.

PRA called Alma only once in November of 2011 and once in October 2011. Neither call was answered.

PRA made four calls to Alma in September 2011, but none were answered.

1

Two calls were placed by PRA top Alma in August of 2011. One call was answered, but then the person on the other end then hung up. The other call was not answered.

One call was placed by PRA in July 2011, but this too was not answered.

Of the four calls PRA placed in June 2011, two were not answered and for the other two, the person who answered hung up.

PRA called Alma seven times in May of 2011. None of the calls were answered.

Of the six calls were made by PRA to Alma in April 2011 that are within one-year of the Plaintiffs' complaint, three were answered and three were answered by an answering device, but no message was left by PRA.[1]

| Date | Time | Result |
|------|------|--------|
| 1/30/2012 | 12:53:28 PM | No Answer |
| 1/24/2012 | 6:40:11 PM | No Answer |
| 1/24/2012 | 1:50:36 PM | No Answer |
| 1/20/2012 | 7:59:04 PM | No Answer |
| 1/20/2012 | 4:01:59 PM | No Answer |
| 1/16/2012 | 7:36:39 PM | No Answer |
| 1/16/2012 | 2:26:02 PM | No Answer |
| 1/10/2012 | 8:28:23 PM | No Answer |
| 1/10/2012 | 2:28:41 PM | No Answer |
| 12/31/2011 | 9:27:32 AM | No Answer |
| 12/19/2011 | 2:54:09 PM | No Answer |
| 12/1/2011 | 3:41:36 PM | No Answer |
| 12/1/2011 | 8:30:18 AM | No Answer |
| 11/19/2011 | 1:17:23 PM | No Answer |
| 10/20/2011 | 9:42:48 AM | No Answer |
| 9/20/2011 | 5:30:13 PM | No Answer |

[1] As shown in the PRA Declaration, Exhibit "A", a total of ten calls were placed by PRA to Alma in April 2011. Section 1692k(d) provides that any action under the FDCPA must be commenced within one-year of the violation. Plaintiff's complaint was filed on April 16, 2012. In April of 2011, four calls were made by PRA prior to April 16, 2011. Ten other calls were made, three in March of 2011 and seven in February. Consistent with Plaintiffs' testimony, none of the calls made prior to April 16, 2011, resulted in a communication between PRA and Plaintiffs.

| 9/20/2011 | 9:47:29 AM | No Answer |
|-----------|------------|-----------|
| 9/2/2011 | 4:44:41 PM | No Answer |
| 9/2/2011 | 8:55:33 AM | No Answer |
| 8/21/2011 | 7:04:15 PM | Answered and person hung up |
| 8/3/2011 | 8:33:31 AM | No Answer |
| 7/22/2011 | 12:40:16 PM | No Answer |
| 6/27/2011 | 8:35:59 PM | No Answer |
| 6/27/2011 | 10:05:25 AM | No Answer |
| 6/22/2011 | 8:47:24 PM | Answered and person hung up |
| 6/12/2011 | 3:01:38 PM | Answered and person hung up after representative asked to speak with Alma |
| 5/27/2011 | 8:37:20 PM | No Answer |
| 5/27/2011 | 6:06:01 PM | No Answer |
| 5/27/2011 | 8:22:47 AM | No Answer |
| 5/22/2011 | 5:52:01 PM | No Answer |
| 5/19/2011 | 9:32:09 AM | No Answer |
| 5/12/2011 | 7:25:15 PM | No Answer |
| 5/12/2011 | 9:49:52 AM | No Answer |
| 4/28/2011 | 5:55:35 PM | Answering machine no message left |
| 4/28/2011 | 8:50:39 AM | No Answer |
| 4/23/2011 | 12:49:18 PM | No Answer |
| 4/20/2011 | 7:40:56 PM | Answering machine no message left |
| 4/20/2011 | 4:17:42 PM | Answering machine no message left |
| 4/20/2011 | 2:39:15 PM | No Answer |

When PRA did call on the same day, it would typically call only twice and the calls were several hours apart. On May 27, 2011, PRA placed three calls to Alma, the first call at 8:22 am, it called Alma nearly 10 hours later at 6:06pm. PRA waited over two hours before placing its final call at 8:37 pm. None of the calls were answered.

PRA also placed three calls to Alma on April 20, 2011, but these calls were also spaced approximately two hours apart or more. Two calls were answered by an answering device, but PRA did not leave a message. The other call was not answered.

All of PRA's calls were placed between 8:00 a.m. and 9:00 p.m. at Alma's local time.

PRA made its last call to Alma on January 30, 2012. On January 31, 2012, PRA received a letter from Plaintiff's attorneys advising of their representation of Plaintiffs. This lawsuit followed.

There is no dispute that PRA's records demonstrate making 39 calls to Alma in connection with the debt, between 8:00 a.m. and 9:00 p.m. local time and that the last call made by PRA to Alma was on January 30, 2012.

PRA's conduct is not abusive, harassing or deceptive. The Complaint must be dismissed.

## LEGAL ARGUMENT

### POINT I

### STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT

Under Federal Rules of Civil Procedure Rule 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 329-330 (D.N.J. 2009).

A trial court may decide a case as a matter of law when no reasonable jury could find in favor of a particular party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the opposing party and refrain from weighing evidence or making credibility determinations. Gray v. York Newspapers, 957 F.2d 1070, 1078 (3d Cir. 1992); Parker, 650 F. Supp. 2d at 329. However, Rule 56(c)(4) requires that affidavits or declarations used to support or oppose a motion for summary judgment be "made on personal knowledge [and] set out facts that would be

admissible in evidence." Rule 56(e) requires proper evidentiary support for all assertions of fact. See Maldonado v. Ramirez, 757 F.2d 48, 50-51 (3d Cir. 1985). Finally, Rule 56(c)(2) requires that the materials cited to support or dispute a fact be presented in a form that would be admissible in evidence. The burden is on the moving party to demonstrate there is no genuine issue of fact based on the record. Gray, 957 F.2d 1070 at 1078. Once the moving party satisfies its burden, the burden then shifts to the respondent. Id. A court should grant summary judgment if the responding party is unable to show the existence of a material issue of fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson, 477 U.S. at 248, 252.

## POINT II

## APPLICATION OF THE FDCPA

### A.      Purpose of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

Congress enacted FDCPA "to eliminate abusive debt collection practices [by debt collectors]." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000), quoting 15 U.S.C. §§ 1692a and 1692e. The FDCPA regulates "communications" (as defined in §1692a(2)) by "debt collectors" (as defined by §1692a(6)) in their attempts to collect "debts" (as defined by §1692a(5)) from "consumers" (as defined by §1692a(3)).

For the purposes of this motion only, PRA considers itself a "debt collector" within the meaning of § 1692a(6); and, that the debt here is a "debt" within the meaning of § 1692a(5). It will also not contest here Alma's assertion that she is a "consumer" within the meaning of § 1692a(3) and that Plaintiff Gregory Rush is her husband and is therefore a consumer within the meaning of § 1692c(d).

Whether a communication between a debt collector and a consumer runs afoul of the FDCPA is analyzed from the perspective of the "least sophisticated debtor." Brown v. Card

5

Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  This standard requires the court "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." Clomon, 988 F.2d at 1318.  The standard is employed to "ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1171 (9th Cir. 2006).

While the FDCPA protects persons from abusive practices in connection with the collection of debts, it also is designed "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. . ." § 1692a(e).

**B.     The Least Sophisticated Debtor Standard Applies Only to Alleged Misleading or Deceptive Communications and Has No Application to Plaintiff's Claims Under 15 U.S.C. §§ 1692d and 1692d(5).**

The application of the least sophisticated debtor standard is inappropriate when evaluating Plaintiff's §§ 1692d and 1692d(5) claims. The Third Circuit has yet to consider whether claims arising under either of these sections should be evaluated under the "least sophisticated debtor" standard.   It has applied the "least sophisticated debtor" standard exclusively in the context of claims based on §§ 1692e (false and misleading representations) and 1692g (validation of debts), where questioning whether the communication was false or misleading is a logical approach based on the section's purpose. See Oppong v. First Union Mortg. Corp., 326 Fed. Appx. 663, 666 (3d Cir. 2009) (unpublished) (applying the "Least Sophisticated Consumer" standard to § 1692g); Brown, 464 F.3d  at 453. (in the context of a § 1692e cause of action); Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 299 (3d Cir. 2008) (regarding an alleged §1692e violation); Rosenau v. Unifund Corp., 539 F.3d 218,

221 (3d Cir. 2008) (§ 1692e); Wilson., 225 F.3d at 354 (§ 1692g); Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) (§ 1692g).

Instead of applying the least sophisticated debtor standard to Plaintiff's §§ 1692d and 1692d(5) claims, the Court should apply a "reasonable" consumer standard which looks to the facts and circumstances surrounding the conduct to determine whether the pattern and frequency of the calls shows an intent to harass, annoy or abuse Plaintiff. See Graziano v. Harrison, 763 F. Supp. 1269, 1281 (D.N.J. 1990), aff'd and rev'd on other grounds, 950 F.2d 107 (3d Cir. 1991) (applying the "least sophisticated debtor" standard to § 1692e(5), but a "reasonable consumer" standard to §1692d (citing Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985)).[2]

## POINT III

### JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. § 1692d(5) CLAIM BECAUSE PRA DID NOT CAUSE THEIR TELEPHONE TO RING REPEATEDLY OR CONTINUOUSLY WITH THE INTENT TO ANNOY OR ABUSE THEM.

Plaintiffs allege that PRA violated § 1692d(5) of the FDCPA simply by making phone calls to them in an attempt to collect an alleged debt. Section 1692d(5) prohibits a debt collector from:

> [C]ausing a telephone to ring or engaging a person in a telephone conversation repeatedly or continuously with the intent to annoy, abuse or harass at the called number.

15 U.S.C. § 1692d(5).

---

[2] "The Court [in Jeter] applied the reasonable debtor standard which took into account the specific circumstances in which the debtor found himself; thus a 'subjective' element enters into the determination of whether certain language constitutes abuse. However, the law does not encourage people to become thin-skinned. Thus, the courts must 'structure the confines of § 1692d', making disposition of claims such as this on summary judgment a favored course." Graziano, 763 F. Supp. at 1281 (citing Jeter, 760 F.2d at 1179).

To support a claim under 1692d(5), Plaintiff has the burden of showing evidence of both repeated or continuous phone calls and an intent to annoy, abuse and/or harass. Shand-Pistilli v. Prof'l Account Servs., 2011 U.S. Dist. LEXIS 64446, at **15 (E.D. Pa. June 16, 2011) citing Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008) (the plaintiff bears the burden of establishing that the calls violated § 1692d(5)).

Here, PRA made 39 telephone calls to Alma in the year before the complaint was filed. None of the calls were personally answered by Plaintiffs.  See Alma Dep., 8:13-15, Gregory Dep., 11:14-15.  Because it is uncontested that neither Plaintiff ever spoke to PRA, PRA could not have violated that part of § 1692d(5) prohibiting debt collectors from "engaging a person in telephone conversations repeatedly or continuously."  § 1692d(5)

The remaining issue is whether PRA caused the Plaintiffs' "telephone to ring . . . repeatedly or continuously with the intent to annoy, abuse or harass at the called number."  § 1692d(5).

### A.  The Standard for Inferring Intent Turns on the Pattern of Calls in Addition to the Number of Calls.

PRA's intent in making the calls was to collect the alleged account. Plaintiff, however, to satisfy § 1692d(5)'s necessary intent element, will ask the court to *infer* that PRA's unanswered phone calls constitute a pattern and frequency to annoy, abuse or harass Plaintiff into paying a debt. See, e.g., Shand-Pistilli v. Prof'l Account Servs., 2011 U.S. Dist. LEXIS 64446, at **16-18.

 Such an inference cannot be drawn here on 39 unanswered calls placed over a one year period. An inference that the intention in making the calls was to harass, as opposed to collect a debt, typically requires evidence that the collector made an inordinate amount of phone calls to the debtor, particularly after the debtor requested that the collector cease calling; made repeated

8

threats; or, where the collector immediately redialed the debtor after the debtor disconnected the phone call. See, e.g., Shand-Pistilli v. Prof'l Account Servs., 2011 U.S. Dist. LEXIS 64446, at **16-18; Griffiths v. Sentry Credit, Inc., 2011 U.S. Dist. LEXIS 91386 (D. Or. Aug. 11, 2011) "However, merely placing calls, without any other abusive conduct, is not harassment." (citing Shand-Pistilli); Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011)(140 calls placed over a two month period insufficient to establish a violation, particularly in the absence of egregious conduct); Nigro v. Mercantile Adjustment Bureau, LLC, 2013 U.S. Dist. LEXIS 34178, at **7 (W.D.N.Y. Mar. 11, 2013)("Defendant correctly asserts that, under the circumstances of this case, the 72 phone calls in a nine-month period are insufficient as a matter of law to establish a violation of § 1692d(5)" citing Carman); Brandt v. I.C. Sys., Inc., No. 8:09-cv-126, 2010 U.S. Dist. LEXIS 14588 (M.D. Fla. Feb. 19, 2010) (inferring intent based on 101 phone calls collector made to debtor after he instructed collector to stop calling him because the calls were bothering him); Joseph v. J.J. MacIntyre Cos., LLC, 238 F. Supp. 2d 1158 (N.D. Cal. 2002) ("Whether there is actionable harassment or annoyance turns not only on the number of calls made, but also on the pattern of calls."); Kuhn v. Account Control Tech., Inc., 856 F. Supp. 1443 (D. Ore. 1994) (inferring intent based on evidence of multiple return calls immediately after the debtor hung up on the collector).

Courts have refused to find a § 1692d(5) violation in cases where the collectors made many more calls as opposed to the unspecified number of calls Plaintiffs allege PRA made to them or the 39 documented calls identified in PRA's business records. See, e.g., Pugliese v. Prof'l Recovery Serv., Inc., No. 09-12262, 2010 U.S. Dist. LEXIS 64111 at *25-26 (E.D. Mich. June 29, 2010) (granting summary judgment under § 1692d(5) to defendant who made 350 phone calls over an 8 month period, holding that "debt collectors do not necessarily engage in

9

harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct (threatening messages)"); Tucker v. CBE Group, Inc., 710 F. Supp. 2d 1301, 1305-1306 (M.D. Fla. 2010) (Absent additional evidence regarding intent to harass, such as calling back after plaintiff hung up, or ignoring plaintiff's request that collectors cease contact, the court found that 57 phone calls, including 7 calls on one day, all of which were either unsuccessful or where the collector left messages on an answering machine, did not violate § 1692d(5) as a matter of law; Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 U.S. Dist. LEXIS 90681 **20-22 (E.D. Mich. Sept. 30, 2009) (concluding that between 20-50 unsuccessful calls and 2-10 successful calls during 33 day period constituted legitimate attempts to contact a debtor as a matter of law, and holding that "[b]eyond the broad allegations contained in her Complaint, Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse").

Here, Plaintiffs' testimony is vague with regard to the number of phone calls that they received as well as the number of calls that they were actually home to witness. See See Alma Dep., 16:15-19, 22:3-5, 22:19-23:2, 23:22-24:4, 30:2-4; Gregory Dep., 10:5-14, 11:10-13, 18:18-21, 19:5-7, 20:10-13. Gregory testified that he was not home from 6:30 am to 7:00 pm Monday through Friday and did not arrive home until after 3:00 pm on Saturdays. See Gregory Dep., 8:19-22, 9:11-15. Alma similarly testified that she was in and out of the house during the day and was not home for all of the calls. See Alma Dep., 16:15-19, 23:22-24:4. All neither Plaintiff could recall ever hearing their telephone ring when PRA called; Alma testified that their telephone could ring no more than five times before it was sent to their voicemail. See Alma Dep., 18:18-20.

10

Courts have also held that a high call volume often indicates that the collector simply had difficulty reaching the debtor and presents no FDCPA violation. See id.; see also Millsap v. CCB Credit Servs., Inc., No. 07-11915, 2008 U.S. Dist. LEXIS 110149 at *22-24 (E.D. Mich. Sept. 30, 2008) (allegations of "receiv[ing] numerous phone calls" were insufficient to infer the intent to harass or annoy because repeated unanswered phone calls were simply unsuccessful attempts to contact the debtor, and "disparity between the number of calls placed and the number of actual conversations between the parties suggests the difficulty of reaching Plaintiff, rather than an intent to harass"); Chavious v. CBE Group, Inc., 2012 U.S. Dist. LEXIS 4362 (E.D.N.Y. Jan. 12, 2012)( 36 unanswered calls over two months, calls placed multiple times a day, "all made at reasonable times and not one immediately following another--is consistent with cases in which other courts have awarded defendants summary judgment on Section 1692d(5) claims); Bey v. Daimler Chrysler Servs., No. 04-6186, 2006 U.S. Dist. LEXIS 8261, *30 (D.N.J. Feb. 15, 2006) ("mere allegations of hang up calls is insufficient to survive summary judgment"); Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d. 1135, 1143-44 (D. Kan. 2004) (one or two unanswered calls a day in an unsuccessful effort to reach a debtor, unaccompanied by any oppressive conduct such as threatening messages, failed to qualify as harassing).

PRA will demonstrate that the undisputed facts show no indicia of intent to annoy, abuse or harass Plaintiffs.  Moreover, PRA never spoke with either Plaintiff as they never answered any of the calls.  See Alma Dep., 8:13-15, Gregory Dep., 11:14-15.

### B.  The Pattern and Frequency of PRA's Phone Calls Demonstrate the Calls Were Not Intended to "Annoy, Abuse or Harass" Plaintiffs Because PRA's Calls Were Only Attempts to Contact Alma and Neither Plaintiff Ever Spoke to PRA.

The pattern and frequency of PRA's phone calls demonstrate the calls were not intended to "annoy, abuse or harass" Plaintiffs because PRA's calls to Alma were only unsuccessful

11

attempts to contact her.  Alma's deposition testimony consists of vague allegations that PRA called her, but she was unable to recall any specific dates or times that she actually heard PRA call her.  See Alma Dep., 16:15-19, 22:3-5, 22:19-23:2, 23:22-24:4, 30:2-4.  After reviewing the complaint (which she testified as to never having seen before), Alma testified that she recalled receiving calls on January 24 and 26, 2012, consistent with paragraph 15 of the Complaint.  See Alma Dep., 13:11-15, 25:1-16.  She also testified that she was with her husband in the hospital every day between January 23 and January 28.  See Alma Dep., 25:19-24.  PRA's business records show two unanswered calls on January 24 spaced 5 hours apart at 1:50 PM and 6:40 pm. See PRA Declaration ¶34.  PRA's business records show no calls on January 26, 2012.  See PRA Declaration ¶34.  Similarly, Gregory's deposition testimony contained vague allegations that PRA called him, but he too was unable to recall any specific dates or times that he actually heard PRA calling except for Sunday mornings.  See Gregory Dep., 10:5-14, 11:10-13, 18:18-21, 19:5-7, 20:10-13.

PRA's business records show only three unanswered calls on Sundays for the entire year preceding the filing of Plaintiffs' complaint, none of which were in the morning: May 22, 2011 at 5:52 pm, June 12, 2011 at 3:01 pm and August 21, 2011 at 7:04 pm.  See PRA Declaration ¶35.

In Carman v. CBE Group, Inc., 782 F. Supp. 2d 1223 (D. Kan. 2011), 147 telephone calls made to the plaintiff over a two-month period were found to not violate §§ 1692d or d(5) because only one call resulted in a conversation, the calls were otherwise unanswered, calls made on the same day were separated by two or more hours and plaintiff never requested the calls to cease.

12

The uncontested facts here evidence PRA called Plaintiffs' far less frequently than the 147 calls over 60 days in <u>Carman</u>. PRA placed 39 calls over the course of an entire year. The calls were not answered by Plaintiffs, (or if they were, the person who answered would hang up on PRA) and calls made the same day were hours apart.

But there is other indicia indicating PRA's calls were for a legitimate purpose. PRA did not call the Plaintiffs every week, the calls were spaced days apart, in some instances weeks apart, and sometimes PRA only called once a month. PRA Declaration, Exhibit "A".

This case lacks any indicia of the intent to harass, annoy or abuse identified as necessary to constitute an FDCPA violation.  PRA's conduct involved only unsuccessful attempts to communicate with Alma.  Both Plaintiffs testified that the "harassment" at issue here is the mere fact that PRA was calling.  <u>See</u> Alma Dep., 8:19-9:1, Gregory Dep., 16:10-12, 25:21-25.

> Q:      And why did you file a lawsuit against them?
> ALMA:  Tired of the harassment, calling all the time.
> Q:      Is the harassment and calling all the time, is that two separate things, or is it the same thing?
> ALMA:  It's the same thing.

<u>See</u> Alma Dep., 8:19-9:1.

> Q:      And how were the calls harassing?
> GREGORY:   It was just very annoying that the phone would ring.
> Q:      Well, is it annoying or harassing or is it offensive?
> GREGORY:  Just annoying and harassing.  You know, it's my home phone.  I don't need people calling me that I don't wish to speak to.

<u>See</u> Gregory Dep., 16:10-12, 25:21-25.

Plaintiffs' § 1692d(5) claim must be dismissed because the pattern and frequency of PRA's phone calls demonstrate the calls were not intended to "annoy, abuse or harass" them. The 39 calls in the year preceding the filing of the complaint all went unanswered according to the Plaintiffs.  On days where more than one call was made, the calls were separated by several

hours and all of the calls were made between 8:00 am and 9:00 pm Plaintiffs' local time.  See PRA Declaration, ¶18, 21 and Exhibit A attached thereto.  The pattern and frequency of PRA's calls demonstrate only that PRA wished to speak to Alma and did not engage either Plaintiff in repeated or continuous conversations or cause their phone to ring repeatedly or continuously with the intent to harass.

### POINT IV

### THE COURT SHOULD DISMISS PLAINTIFFS' §1692d CLAIM AS A MATTER OF LAW, BECAUSE A PHONE CALL DOES NOT HAVE THE NATURAL CONSEQUENCE OF HARASSING, ANNOYING OR OPPRESSING A PERSON.

The Court should dismiss plaintiff's § 1692d claim as a matter of law, because without other evidence, placing a call to collect a debt does not have the natural consequence of harassing, annoying or oppressing a person. See Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (affirming the Rule 12(b)(6) dismissal of the plaintiff's allegation that the collector violated §1692d by filing a debt collection complaint without the immediate means to prove the lawsuit).

Courts have construed §1692d as prohibiting conduct which has the *natural consequence* of embarrassing, upsetting or frightening a debtor, or is likely to cause suffering and anguish. Harvey, 453 F.3d at 330.  "Any attempt to collect a defaulted debt will be unwanted by a debtor," but not every unwanted act by a debt collector has the "natural consequence" of harassing or abusing a debtor. Harvey, 453 F.3d at 330 (citation omitted); Martin v. Select Portfolio Serving Holding Corp., 2008 U.S. Dist. LEXIS 16088, at **16 (S.D.Ohio Mar. 3, 2008) ("Any call from a debt collector may be presumed to be unwelcome, but that alone is insufficient to constitute a violation of the FDCPA.").

14

If repeated or continuous calls, absent a showing of wrongful intent, are simply not enough to sustain a §1692d(5) claim, it logically follows that repeated or continuous telephone calls, alone, do not to have the natural consequence of abusing, harassing or oppressing a person. If such were the case, then § 1692d(5), would be rendered superfluous.

Typically, whether the conduct complained of has the natural consequence to harass, oppress or abuse is a question for a jury. However, circuit courts have held that Congress intended for courts to decide the confines of § 1692d. <u>See</u>, <u>e.g.</u>, <u>Jeter v. Credit Bureau,</u> 760 F.2d at 1179 (citing S.Rep. No. 95-832, 95th Cong., 1st Sess.) <u>reprinted in</u> U.S.C. Cong. & Ad.News 1695, 1698 (1977) ("courts will proscribe 'other improper conduct which is not specifically addressed'"). Thus, courts may determine the issue of whether the conduct has the natural consequence of harassing, abusing or oppressing a person. <u>Id.</u>; <u>Harvey</u>, 453 F.3d at 330 (citing, <u>Jeter</u>, 760 F.2d at 1179); <u>Regan v. Law Offices</u>, No. 08-5923, 2009 U.S. Dist. LEXIS 112046, **18-*20 (E.D. Pa. Dec. 1, 2009) (citing <u>Jeter</u>, 760 F.2d at 1179); <u>Graziano v. Harrison</u>, 763 F. Supp. 1269, 1281 (D.N.J. 1990), <u>aff'd</u> and <u>rev'd</u> in part on other grounds, 950 F.2d 107 (3d Cir. 1991) (threat of a lawsuit not a violation of §1692d as a matter of law and applying a "reasonable consumer" standard).

Here, Plaintiffs' sole claim supporting harassing, abusive or oppressive conduct is that PRA called them and the calls were unwanted. As a matter of law, unwanted collection efforst are not a violation of the FDCPA.

The Court should dismiss Plaintiffs' § 1692d claim with prejudice because a collector's act of placing phone calls to collect a debt does not have the natural consequence of abusing, harassing or oppressing a person as a matter of law.

## POINT V

## JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. § 1692c(a)(1) CLAIM BECAUSE PRA DID NOT CALL IN CONNECTION WITH THE COLLECTION OF A DEBT PRIOR TO 8:00 AM.

"Without the prior consent of the consumer being given directly to the debt collector . . . a debt collector may not communication with a consumer in connection with the collection of any debt – (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.  In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location." 15 U.S.C § 1692c(a)(1).

Plaintiff alleges PRA violated this section by calling them prior to 8:00 am.  Complaint, ¶ 24.  To survive this motion for summary judgment, Plaintiffs must demonstrate that there is a genuine issue of fact that this conduct occurred. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 585-586 (quoting Fed. Rule Civ. Proc. 56(e)). A "genuine issue of fact" is "more than just 'bare assertions, conclusory allegations or suspicions.'" Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The record demonstrates Plaintiff's proofs on this claim are nothing more than "bare assertions, conclusory allegations or suspicions." Plaintiffs have no recollection of when these alleged calls took place.  Even though Plaintiffs' Complaint states that PRA called before 8:00 am on January 24, 2012, Alma testified that the call that day came *at* 8:00 am, not before.  See Alma Dep., 28:7-11.  Alma further testified that there may have been times that they called

before 8:00 am but she did not remember any of the dates these calls were placed.  <u>See</u> Alma

Dep., 29:3-7.  Gregory testified that he did not remember any calls before **9:00 am**.  <u>See</u> Gregory

Dep., 19:12-13, 21:15-22:1.  PRA's undisputed business records show no calls before 8:00 am

on any day and the unanswered calls on January 24, 2012 both took place in the afternoon at

1:50 pm and 6:40 pm.  <u>See</u> PRA Declaration ¶34 and Exhibit A attached thereto.

Almas speculation that there might have been calls before 8:00 am, does not rise to the

required "specific facts showing that there is a *genuine issue for trial."* Plaintiff's claim under §

1692c(a)(1) should be dismissed.

**POINT VI**

**JUDGMENT SHOULD BE ENTERED AGAINST**
**PLAINTIFFS ON THEIR 15 U.S.C. § 1692c(a)(2)**
**CLAIM BECAUSE PRA DID NOT CALL IN**
**CONNECTION WITH THE COLLECTION OF A**
**DEBT AFTER IT KNEW THAT PLAINTIFFS WERE**
**REPRESENTED BY AN ATTORNEY.**

"Without the prior consent of the consumer being given directly to the debt collector . . .

a debt collector may not communication with a consumer in connection with the collection of

any debt – (2) if the debt collector knows the consumer is represented by an attorney with respect

to such debt. . . ." 15 U.S.C § 1692c(a)(2).

Plaintiff alleges PRA violated this section by calling them after it knew that they were

represented by an attorney.  Complaint, ¶ 27.  To survive this motion for summary judgment,

Plaintiffs must demonstrate that there is a genuine issue of fact that this conduct occurred.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. at 585-586 (quoting Fed. Rule Civ.

Proc. 56(e)). A "genuine issue of fact" is "more than just 'bare assertions, conclusory allegations

17

or suspicions.'" <u>Podobnik v. United States Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) citing

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

Again, Plaintiffs' testimony is vague with regard to when they received phone calls and

whether they were actually home when these calls came in.  <u>See</u> Alma Dep., 16:15-19, 22:3-5,

22:19-23:2, 23:22-24:4, 30:2-4; Gregory Dep., 10:5-14, 11:10-13, 18:18-21, 19:5-7, 20:10-13.

Moreover, neither Plaintiff has any personal knowledge of the reason for PRA's alleged calls as

they did not answer them.  <u>See</u> Alma Dep., 8:13-15, 12:2-22, Gregory Dep., 11:14-15, 12:7-11.

The plain language of § 1692c(a)(2) is limited to the debt specified in the letter of representation:

"the consumer is represented by an attorney <u>with respect to such debt.</u>"  <u>Id.</u>  <u>See</u> <u>also</u>, <u>Graziano v.</u>

<u>Harrison</u>, 950 F.2d 107, 113 (3d Cir. 1991).  Thus, any calls to Plaintiffs' home not related to the

debt identified in the attorney representation letter cannot be actionable under § 1692c(a)(2).

Plaintiffs never answered any of PRA's phone calls.  <u>See</u> Alma Dep., 8:13-15, Gregory Dep.,

11:14-15.  Plaintiffs acknowledged that the calls could have been for them or could have been

for someone else.  <u>See</u> Alma Dep., 12:2-22.  Plaintiffs' own testimony acknowledges that they

cannot meet their burden of proof with regard to who any calls were for other than the calls

identified in PRA's business records.

PRA's undisputed business records show that the attorney representation letter was

received and processed by PRA's disputes department on January 31, 2012 at 12:45 PM.  <u>See</u>

PRA Declaration, ¶40 and Exhibit A attached thereto.  Pursuant PRA's policies and procedures,

once an attorney representation letter is placed on the file, calls cannot be made on the account.

<u>See</u> PRA Declaration, ¶44, 45.  After the attorney representation was noted on Alma's account,

no further calls were made to Alma.  <u>See</u> PRA Declaration, ¶46.  On February 1, 2012, a letter

was sent to Plaintiffs' attorneys advising them that the account would be closed and no further

18

attempts would be made to collect on the account.  See PRA Declaration, ¶47 and Exhibit C attached thereto.

Based on the undisputed facts, Plaintiffs cannot meet their burden of proof to show that PRA communicated with them regarding Alma's alleged debt after it had knowledge that Plaintiffs were represented by counsel with regard to Alma's alleged debt.  Their claim under § 1692c(a)(2) should be dismissed.

### POINT VII

### JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. § 1692c(c) CLAIM BECAUSE PRA DID NOT CALL PLAINTIFFS IN CONNECTION WITH THE COLLECTION OF A DEBT AFTER IT RECEIVED A CEASE & DESIST LETTER FROM PLAINTIFF'S ATTORNEYS.

"If a consumer notified a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . ." 15 U.S.C § 1692c(c).

Plaintiff alleges PRA violated this section by calling them after it knew that they received a cease and desist letter from their attorney.  Complaint, ¶ 29.  To survive this motion for summary judgment, Plaintiffs must demonstrate that there is a genuine issue of fact that this conduct occurred. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 585-586 (quoting Fed. Rule Civ. Proc. 56(e)). A "genuine issue of fact" is "more than just 'bare assertions, conclusory allegations or suspicions.'" Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

19

As with the prior claims, Plaintiffs' testimony is vague with regard to when they received phone calls and whether they were actually home when these calls came in.  See Alma Dep., 16:15-19, 22:3-5, 22:19-23:2, 23:22-24:4, 30:2-4; Gregory Dep., 10:5-14, 11:10-13, 18:18-21, 19:5-7, 20:10-13.  Moreover, neither Plaintiff has any personal knowledge of the reason for PRA's alleged calls as they did not answer them.  See Alma Dep., 8:13-15, Gregory Dep., 11:14-15.  The plain language of § 1692c(c) is limited to the debt specified in the cease and desist request: "the debt collector shall not communicate further with the consumer with respect to such debt."  Id.   Thus, any calls to Plaintiffs' home not related to the debt identified in the cease and desist request cannot be actionable under §1692c(c).  Plaintiffs never answered any of PRA's phone calls.  See Alma Dep., 8:13-15, Gregory Dep., 11:14-15.  Plaintiffs acknowledged that the calls could have been for them or could have been for someone else.  See Alma Dep., 12:2-22.  Plaintiffs' own testimony acknowledges that they cannot meet their burden of proof with regard to who any calls were for other than the calls identified in PRA's business records.

PRA's undisputed business records show that the cease and desist letter was received and processed by PRA's disputes department on January 31, 2012 at 12:45 PM.  See PRA Declaration, ¶40 and Exhibit A attached thereto.  Pursuant PRA's policies and procedures, once a cease & desist is placed on the file, calls cannot be made on the account.  See PRA Declaration, ¶44.  After the cease & desist was noted on Alma's account, no further calls were made to Alma.  See PRA Declaration, ¶46.  On February 1, 2012, a letter was sent to Plaintiffs' attorneys advising them that the account would be closed and no further attempts would be made to collect on the account.  See PRA Declaration, ¶47.

Based on the undisputed facts, Plaintiffs cannot meet their burden of proof to show that PRA communicated with them regarding Alma's alleged debt after it received their cease & desist request.  Their claim under § 1692c(c) should be dismissed.

### POINT VIII

### ALTERNATIVELY, JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. §§ 1692c(a)(1), c(a)(2) and c(c) CLAIMS BECAUSE PRA DID NOT COMMUNICATE WITH THEM.

Claims under 15 U.S.C. §§ 1692c(a)(1), c(a)(2) and c(c) are limited to "communications." The term communication is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The plain language of the statute requires that some information regarding the debt be "conveyed" to someone. See, Marx v. General Revenue Corp., 668 F.3d 1174, 1177 (10th Cir. 2011) aff'd 133 S. Ct. 1166 (2013) (a fax which did not reference a debt was not a "communication" within the meaning of the FDCPA, because it did not expressly reference the debt and could not even impliedly ". . . be construed as 'conveying' information 'regarding a debt.'").

Here, Plaintiffs testified that they did not answer any of PRA's calls. If the call was not answered, no information was conveyed regarding a debt. This is not a situation where Plaintiffs are alleging that PRA spoke to them or left voicemails on their answering machine. In its commentary on the FDCPA, the Federal Trade Commission explains that the definition of communication "does not include situations in which the debt collector does not convey information regarding the debt." 53 Fed. Reg. 50097-50110, § 803(2). Courts have continuously held that unanswered phone calls and letters that are not received are not

21

"communications" as defined by 15 U.S.C. § 1692a(2) or actionable under 15 U.S.C. § 1692c. See, e.g. Worsham v. Acct. Receivables Mgmt., Inc., 2011 U.S. Dist. LEXIS 134870, aff'd 2012 U.S. App. LEXIS 23491 (D. Md., Nov. 22, 2011) ("Indeed, it appears that only two of the ten total telephone calls to Worsham were answered. The rest, as unanswered telephone calls, can hardly be considered 'communications' under the FDCPA); Seaworth v. Messerli, 2010 U.S. Dist. LEXIS 143455 (D. Minn. Sept. 7, 2010) (letter not received was not an actionable "communication" under the FDCPA).

In Wilfong v. Persolve, LLC, 2011 U.S. Dist. LEXIS 71068 (D. Ore., June 2, 2011), the Plaintiff alleged that she received a phone call from a debt collector after sending the debt collector a cease and desist request. While the parties disputed whether the call was actually made, the Plaintiff acknowledged that she did not answer the call. The court held that "no information regarding a debt was conveyed directly or indirectly to plaintiff by the receipt of the unanswered telephone call, if the call took place. Even with a broad reading of the FDCPA to carry out its purpose, on these facts, the court concludes that the receipt of an unanswered telephone call does not constitute a 'communication' within the meaning of the FDCPA." Id. at *10.

In Cozmyk v. Prompt Recovery Services, Inc., 851 F. Supp. 2d 991 (S.D.W. Va. 2012), the court dismissed a plaintiff's complaint that alleged that a voice mail was left on a family answering machine because there was no allegation that a third party actually heard the message. The court reasoned that "a message is not a communication until it is received or understood by the third party." Id. at 994. See also Rayl v. Moores, 2010 U.S. Dist. LEXIS 115061 (S.D. Ind., Oct. 28, 2010) (Because a voicemail cannot logically 'convey[] ... information' to a homeowner who never heard it, the voicemail cannot qualify as a communication).

22

Finally, in <u>Zortman v. J.C. Christensen & Associates, Inc.</u>, 870 F. Supp. 2d 694 (D. Minn. 2012), the court considered whether a voicemail that did not identify a consumer or a debt was a "communication" under the FDCPA.   In <u>Zortman</u> voicemail did state that it concerned an "important message" and was "a call from a debt collector."   The court however found this message was not a communication under the FDCPA because its content did not "convey information regarding a debt," and conveyed no more information than a hang-up call (which it found was not a communication). <u>Id.</u> at 706.

15 U.S.C. § 1692c does not prohibit unanswered telephone calls. Rather, Congress crafted the section to regulate only what it defined as "communications."

Here, Plaintiffs have acknowledged that they did not answer any of PRA's phone calls. No information was conveyed about any debt to anyone in any of the 39 telephone calls made by PRA. As such, the unanswered calls are not "communications" as defined by 15 U.S.C. § 1692a(2) and Plaintiffs' claims under 15 U.S.C. § 1692c must be dismissed.

## POINT IX

### JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. § 1692c CLAIMS BECAUSE EVEN IF DEFENDANT VIOLATED 15 U.S.C. § 1692c IT WAS UNINENTIONAL AND RESULTED FROM A BONA FIDE ERROR NOTWITHSTANDING THE MAINTENANCE FO PROCEDURES REASONABLY ADAPTED TO AVOID ANY SUCH ERROR.

"A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C §1692k(c).

23

**A. PRA Maintains Procedures to Avoid Calling Debtors Prior to 8:00 am Local to the Debtor.**

REDACTED    FROM    ONLINE    FILING    PURSUANT    TO    DISCOVERY

CONFIDENTIALITY ORDER DATED MARCH 7, 2013

REDACTED    FROM    ONLINE    FILING    PURSUANT    TO    DISCOVERY

CONFIDENTIALITY ORDER DATED MARCH 7, 2013

**B. PRA Maintains Procedures to Avoid Contacting Debtors After Receipt of a Letter Indicating that they are Represented by an Attorney or that the Debtor Requests that PRA Cease Communications with them.**

REDACTED    FROM    ONLINE    FILING    PURSUANT    TO    DISCOVERY

CONFIDENTIALITY ORDER DATED MARCH 7, 2013

25

REDACTED   FROM   ONLINE   FILING   PURSUANT   TO   DISCOVERY
CONFIDENTIALITY ORDER DATED MARCH 7, 2013

REDACTED   FROM   ONLINE   FILING   PURSUANT   TO   DISCOVERY

CONFIDENTIALITY ORDER DATED MARCH 7, 2013

## POINT X

### JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR 15 U.S.C. § 1692f CLAIM BECAUSE PRA DID NOT USE UNFAIR AND UNCONSCIONABLE MEANS TO COLLECT A DEBT.

"A debt collector may not use unfair or unconscionable means to collect or attempt to

collect any debt." 15 U.S.C §1692f.  Plaintiffs' claims under 15 U.S.C. § 1692f are the same

claims they have made under 15 U.S.C. §§ 1692c and 1692d.  A claim under 1692f "is deficient

if it does not identify any misconduct beyond that which the plaintiff asserts violates other

provisions of the FDCPA." Cox v. Hilco Receivables, L.L.C., 726 F. Supp. 2d 659, 666 (N.D.

Tex. 2010) (citing Chalik v. Westport Recovery Corp., 677 F. Supp. 2d 1322, 1330 (S.D. Fla.

2009)).

Plaintiffs' § 1692f claim should be dismissed.

## POINT XI

### JUDGMENT SHOULD BE ENTERED AGAINST PLAINTIFFS ON THEIR INVASION OF PRIVACY CLAIM BECAUSE PRA DID NOT ENGAGE IN AN INTRUSION THAT WOULD BE HIGHLY OFFENSIVE TO A REASONABLE PERSON.

"The law of privacy comprises four distinct  kinds of invasion of four different interests

of the plaintiff. . . . (i) commercial appropriation of one's name or likeness, (ii) intrusion, (iii)

public disclosure of private facts and (iv) publicity which places the plaintiff in a false light in

the public eye." Figured v. Paralegal Technical Services, Inc., 231 N.J. Super. 251, 256 (App.

Div. 1989) (citations omitted).  "One who intentionally intrudes, physically or otherwise, upon

27

the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Hennessey v. Coastal Eagle Point Iol Co., 129 N.J. 81, 94-95 (1992) (quoting Restatement of Torts, Second, § 652B). In examining this tort, New Jersey courts have emphasized that "a person's private, personal affairs should not be pried into." Id. (quoting Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 340 (App. Div. 1982)). "Conversely, though, there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known." Id.

With regard to debt collection, the Restatement limits liability to situations where "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence." Restatement of Torts, Second, § 652B. However, the fact that a collector is simply calling to collect a debt is not an invasion of privacy as noted in the Restatement: "A, a landlord, calls upon B, his tenant at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that B is not ready to pay it and that B objects to such a visit on Sunday. B is seriously annoyed. This is not an invasion of B's privacy." Id., cmt. D., illustration 8.

Here, there was nothing about PRA's conduct that was highly offensive to a reasonable person. PRA made 39 phone calls to Alma, many of which occurred when she was not home, that she has little or no recollection of and all of which were unanswered. The mere act of placing phone calls to Alma is not an invasion of privacy. Numerous courts have rejected invasion of privacy claims in connection with call volume cases absent more than the allegation that the calls were made. See e.g. Marseglia v. JP Morgan Chase Bank, 750 F. Supp. 2d 1171, 1177 (S.D. Cal., 2010) ("Although plaintiffs allege a total of fifty (50) calls were made in one

28

week, there are no facts alleged upon which this Court could infer plaintiffs ever answered any of these calls or defendant ever made any direct contact with plaintiffs that might be construed as annoying or harassing conduct. Without such allegations, this Court is not convinced that the number of calls in itself can be considered highly offensive above a speculative level."); Oppenheim v. I.C. Sys., 695 F. Supp. 2d 1303, 1310 (M.D. Fla., 2010) aff'd 2010 U.S. App. LEXIS 24888 (11th Cir. Fla., Dec. 7, 2010) ("There is no doubt that I.C. System's [35 to 40 calls in three months] to Oppenheim were annoying and bothersome. However, those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion. Defendant is therefore entitled to summary judgment on Plaintiff's claim for invasion of privacy."); Kleiman v. Equable Ascent, 2013 U.S. Dist. LEXIS 1002, *9-10 (C.D. Cal., Jan. 3, 2013) (defendant calling plaintiff twice within a twenty-four hour period on numerous occasions did not describe conduct that is highly offensive for purposes of the tort of invasion of privacy); Smith v. Capital One Fin. Copr., 2012 U.S. Dist. LEXIS 664454, *12 (N.D. Cal., May 11, 2012) (The only conduct alleged is calls made to plaintiff's phone, which is far from the conduct that courts have found "highly offensive."); Stuart v. AR Res., Inc., 2011 U.S. Dist. LEXIS 27025 (E.D. PA. 2011, Dec. 23, 2000) ("Plaintiff merely avers that Defendants called her persistently, and then concludes that such calls were sufficient to demonstrate a substantial burden. Nowhere does Plaintiff specify the number or substance of the calls, nor does she offer examples of 'highly offensive' conduct . . . 'efforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy.'")

Courts that have permitted Plaintiffs to pursue invasion of privacy claims have done so under much more egregious facts then those in this case.  See e.g. Robinson v. Managed Accounts Receivable Corp., 654 F. Supp. 2d 1051 (C.D. Cal. 2009) (plaintiff alleged that the

29

debt collector had repeatedly called her workplace and spoke to her co-workers, even after being told not to call her at work); <u>Fausto v. Credigy Servs. Corp.</u>, 598 F. Supp. 2d 1049 (N.D. Cal. 2009) (in addition to large volume of calls, content of calls was also harassing, employees failed to identify themselves when calling, allowed the phone to ring repeatedly and then called back immediately after the debtors hung up the phone).

Here, Plaintiffs' sole claim supporting their invasion of privacy claim is that PRA called them, even though the calls went unanswered.  Both Plaintiffs testified that the calls themselves were not offensive, the were simply unwanted.  <u>See</u> Alma Dep., 33:3-5, Gregory Dep., 25:21-25. Therefore, Plaintiffs cannot meet their burden of proving that PRA engaged in an intrusion that is highly offensive to a reasonable person and their invasion of privacy claims must be dismissed.

<u>CONCLUSION</u>

For all of the foregoing reasons, Portfolio Recovery Associates, LLC respectfully requests this court to grant its motion for Summary Judgment.

Respectfully Submitted,

***/s/ Donald S. Maurice, Jr.***
Donald S. Maurice, Jr., Esq.
***/s/ Thomas R. Dominczyk***
Thomas R. Dominczyk, Esq.
Maurice & Needleman, P.C.
Attorney for Defendant
Portfolio Recovery Associates, LLC
5 Walter E. Foran Blvd., Suite 2007
Flemington, NJ 08822
(908) 237-4550
(908) 237-4551
dsm@mnlawpc.com
trd@mnlawpc.com