**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
ALMA AND GREGORY RUSH,                  :
                                        :
                    Plaintiffs,         :        Civ. No. 12-2276(FLW)(DEA)
                                        :
        v.                              :        **OPINION**
                                        :
PORTFOLIO RECOVERY                      :
ASSOCIATES LLC,                         :
                                        :
                    Defendant.          :
                                        :
_____       :

**WOLFSON, United States District Judge:**

This matter arises out of a Complaint filed by Plaintiffs Alma and Gregory Rush (collectively, "Plaintiffs'"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, as well as a state law claim for invasion of privacy. Defendant Portfolio Recovery Associates, LLC ("Defendant" or "Portfolio") filed a motion for summary judgment to dismiss all counts of the Complaint. For the reasons that follow, Portfolio's motion is granted on Plaintiffs' claims under § 1692c(a)(1)-(2) & (c) and § 1695f, as well as the state law invasion of privacy claim; Portfolio's motion is denied with respect to Plaintiffs' claims under § 1692d & d(5).

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

The following facts are undisputed and are drawn primarily from the parties' Local Rule 56.1 statements of undisputed material facts; additional and disputed facts will be set forth as appropriate.

1

Plaintiffs are residents of Phillipsburg, New Jersey, and Portfolio is a national debt collection agency with its headquarters located in Norfolk, Virginia. Compl., ¶¶ 6, 8. The claims in this case arise out of phone calls Portfolio placed to Plaintiffs' home in connection with a debt allegedly owed by Plaintiff Alma Rush. Def. Facts, ¶ 13. The dates and times of some of these calls are disputed, with Portfolio presenting a business record showing calls made only in the months of December 2011 and January 2012,[1] *see* Def. Br., Decl. of Nyetta C. Jackson, Ex. A. (Portfolio call log), and Plaintiffs testifying in deposition that these calls continued through April 2012. Pl. Facts, ¶ 11. During the relevant time period covered by the Complaint, none of Portfolio's phone calls were answered by Plaintiffs; Plaintiff Alma Rush never spoke with anyone at Portfolio over the phone.[2] Def. Facts, ¶¶ 3, 18. Instead, Plaintiffs would allow the phone to ring up to five times until their voicemail system picked up. *Id.* at ¶ 8. Although no message was ever left on the voicemail, Portfolio's number and a portion of its business name was captured by Plaintiffs' caller ID system. *Id.* at ¶ 11.

In January 2012, Plaintiffs retained counsel, who sent a cease and desist letter to Portfolio on January 26, 2012, that was eventually logged into Portfolio's records on January 31, 2012 at 12:45 p.m. *Id.* at ¶¶ 27-29. In response, Portfolio sent a letter to

---

[1] Portfolio's call log shows calls that occurred prior to December 2011. Because the Complaint only brings causes of action based on calls allegedly made between December 2011 and April 2012, however, I consider only that portion of the call log.

[2] Although Plaintiffs claim in their Local Rule 56.1 Statement that some of Portfolio's own records seem to indicate that several calls were answered, Plaintiffs have not pointed to any evidence that they or their voicemail system actually answered any calls from Portfolio between December 2011 and April 2012; indeed, the parties often appear to refer to phone calls in their papers that occurred before the time period covered by the Complaint. *See also supra*, footnote 1. In any event, it is undisputed that Plaintiffs did not receive any voicemails from Portfolio or engage in any telephonic conversation with someone from Portfolio between December 2011 and April 2012. *See, e.g.*, Dep. of Alma Rush, 11:20-12:1; 35:12-53:14.

Plaintiffs' counsel on February 1, 2012, acknowledging receipt of the cease and desist letter and stating that no further attempts would be made to collect on the account. *Id.* at ¶ 33. Plaintiffs, again through counsel, sent another cease and desist letter to Portfolio on May 9, 2012, demanding a second time that Portfolio cease communications with Plaintiffs. Def. Opp., Ex. E. The impetus for this second letter were calls allegedly made by Portfolio to Plaintiffs after the first cease and desist letter. *See id.*

On April 16, 2012, Plaintiffs filed their Complaint against Portfolio. In the Complaint, Plaintiffs allege that Portfolio violated several provisions of the FDCPA. Specifically, Plaintiffs allege: in Count One a violation of 15 U.S.C. § 1692c(a)(1) (inconvenient communications); in Count Two, a violation of § 1692c(a)(2) (communication after known representation by attorney); in Count Three, a violation of § 1692c(c) (communication after demand to cease); in Count Four, a violation of § 1692d (harassing conduct); in Count Five, a violation of § 1692d(5) (annoying telephone ringing); and in Count Six, a violation of § 1692f (unfair or unconscionable conduct). Plaintiffs also claim, in Count Seven, a violation of their state law right to privacy. Portfolio now moves for summary judgment on all counts of Plaintiffs' Complaint.

## II.   STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

3

A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  *See id.* at 252.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The nonmoving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading.  *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

## III.  DISCUSSION

### A.  FDCPA Claims Under § 1692c(a)(1)-(2) & (c)

Portfolio moves for summary judgment on Plaintiffs' claims under § 1692c(a)(1), (a)(2) and (c) on the basis that the undisputed facts show that Portfolio did not violate any of these sections of the FDCPA and, alternatively, that Portfolio's contact with Plaintiffs did not constitute "communications" under the FDCPA.  I address Portfolio's alternative argument first, as my resolution of that issue limits my analysis of Plaintiffs' claims.

1.      Whether unanswered phone calls are "communications" under the FDCPA

According to Portfolio, it is undisputed that the only conduct potentially violative of the FDCPA in this case is unanswered telephone calls placed to Plaintiffs at their home residence.[3]  Relying on the FDCPA's statutory definition of "communication," as well as relevant case law, Portfolio asserts that none of these calls run afoul of § 1692c(a)(1)-(2) & (c) because they cannot properly be considered communications under the statute. Plaintiffs oppose Portfolio's argument, asserting that although the calls went unanswered, Plaintiffs' caller ID system captured Portfolio's identifying information, distinguishing these calls from ordinary unanswered phone calls.

The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  *Id.* § 1692a(2).  Portfolio contends that unanswered phone calls, by their very nature, do not convey "information regarding a debt," and likewise rejects the notion that basic identifying information on a caller ID device provides any such information.  In support, Portfolio relies on several cases holding that unanswered phone calls and other forms of communication that do not supply "information regarding a debt" are not communications under the FDCPA.  In response, Plaintiffs point to a decision by the District Court for the District of Connecticut, which found that eight unanswered phone calls to the plaintiff's home by the debt collector constituted communications because, although the calls went unanswered, the collector's number and information were displayed on the plaintiff's caller ID.  *See Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139 (D. Conn. 2012).  Plaintiffs argue that *Cerrato* is directly on point with the facts

---

[3]      *See supra*, footnotes 1 & 2.

in this case, and compels the conclusion that the 39-plus unanswered phone calls were communications because, like in *Cerrato*, Portfolio's identifying information appeared on Plaintiffs' caller ID.

The facts in *Cerrato* differ somewhat from those in the instant matter.[4]  In that case, the debt collector had called the plaintiff 117 times about her debts before the plaintiff sent, and the debt collector received, a cease and desist letter.  *Id.* at 145.  It is unclear from the opinion whether the plaintiff answered any of these 117 phone calls or otherwise communicated with the debt collector prior to sending the cease and desist letter, although, inferentially, it appears that the plaintiff did speak with representatives from the debt collector during at least some of these calls.  *See id.* at 141, 145.  None of these 117 calls, however, were at issue in the plaintiff's case.  Rather, the question was whether calls that were made by the debt collector after the cease and desist letter violated the FDCPA.  *Id.* at 145.  Following receipt of the letter, the debt collector attempted to call the plaintiff eight more times; each of these calls went unanswered, but the call, along with the debt collector's identifying information, was displayed on the plaintiff's caller ID.  *Id.* at 145.  The court found that (1) the plaintiff knew that the debt collector was calling her because, at that point, the plaintiff had full knowledge of the debt collector's identity, and (2) the debtor continued to call for the same reason that it had in the past—to communicate with the plaintiff about a debt.  *Id.* at 141 (finding it undisputed that "Cerrato knew that Solomon was calling her and that the calls were about a debt, as they had been for the past several years"); *id.* at 145 (same).

---

[4]     Although *Cerrato* is not binding precedent, it is one of the few, published, opinions on this issue.

In finding that the unanswered calls were communications, the *Cerrato* court reasoned that "anyone familiar with [the debt collector]'s name and telephone number, as displayed on [plaintiff]'s caller ID display, would know it is a debt collector." *Id.* at 145. Similarly, the *Cerrato* court found that, based on the facts that the debt collector had previously called the plaintiff and the sheer volume of the phone calls before and after the cease and desist letter, the clear purpose of the phone calls was to "provide the debtor with enough information to entice a return call." *Id.* (internal citations omitted). The *Cerrato* court accordingly denied summary judgment for the debt collector because it found that the "eight unanswered telephone calls . . . constitute[d] 'communications' under the FDCPA—at least calls in which the debt collector's name and telephone number appear[ed] on the consumer's caller ID display and follow[ed] over 100 calls previously placed by that debt collector." *Id.* at 149.

In contrast to *Cerrato*, Portfolio points to several decisions in which courts have concluded under facts similar to this case that unanswered phone calls do not constitute communications under the FDCPA. *E.g.*, *Wilfong v. Persolve, LLC*, No. CIV. 10-3083-CL, 2011 WL 2678925 (D. Or. June 2, 2011) *report and recommendation adopted*, No. CIV. 10-3083-CL, 2011 WL 2601559 (D. Or. June 30, 2011); *Worsham v. Acct. Receivables Mgmt., Inc.*, No. CIV. JKB-10-3051, 2011 WL 5873107 (D. Md. Nov. 22, 2011). In *Wilfong*, the court held that "[n]o information regarding a debt was conveyed directly or indirectly to [the] plaintiff by the receipt of the unanswered telephone call" because the debt collector never left a message. 2011 WL 2678925, at *4. In that regard, the *Wilfong* court did not find it material that the debt collector's number appeared on the plaintiff's caller ID system. *Id.* at *2-*3. According to the judge, "[e]ven with a broad

7

reading of the FDCPA to carry out its purpose, on these facts, . . . the receipt of an unanswered telephone call does not constitute a 'communication' within the meaning of the FDCPA." *Id.* at *4. Similarly, in *Worsham*, the plaintiff initially answered several phone calls, and was presented with the following message: "[T]his is a call for Martha. If this is Martha please press one. If this is not Martha, please press two." 2011 WL 5873107, at *3. The plaintiff listened to this message twice, hanging up both times, and then chose not to answer eight subsequent calls. *Id.* On a motion for summary judgment, the *Worsham* court noted that the record failed to disclose that the plaintiff understood the caller to be a debt collector, or that the caller was attempting to deliver a message containing "information regarding a debt. *Id.* Based on these facts, the court relied on *Wilfong* and determined that the unanswered calls could not be considered "communications" under the FDCPA. *Id.* at *3-*4 (*citing Wilfong*, 2011 WL 2678925, at *3-*4); *see also* 15 U.S.C. § 1692a(2).

Other courts have found that different methods of contacting a consumer do not fall within the FDCPA's statutory definition of "communication" when there is no reference to a debt. *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) (holding that fax only requesting employment verification not a communication because fax did not reference debt and sender's letterhead did not make explicit that request was from a debt collector); *Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d 694, 704 (D. Minn. 2012) (finding that voicemail identifying caller as debt collector was not a communication because it did not reference any debt); *Biggs v. Credit Collections, Inc.*, No. CIV-07-0053-F, 2007 WL 4034997 (W.D. Okla. Nov. 15, 2007) (finding, after review of transcript of voicemail messages,

that voicemails were not communications because they conveyed no information regarding a debt); *see also Zamos II v. Asset Acceptance, LLC*, 423 F. Supp. 2d 777, 782 (N.D. Ohio 2006) (suggesting that a call merely identifying caller as a debt collector is insufficient to violate the FDCPA); *Committee v. Dennis Reimer Co., L.P.A.*, 150 F.R.D. 495, 499-500 (D. Vt. 1993) (finding that message left with third party containing erroneous information did not constitute communication regarding a debt); *Cozmyk v. Prompt Recovery Servs., Inc.*, 851 F. Supp. 2d 991, 994 (S.D. W.Va. 2012) (finding, based on dictionary definition, that a communication requires a party "to transmit information, thought, or feeling so that it is satisfactorily received or understood"); *Seaworth v. Messerli*, Nos. 09-3437, 09-3438, 09-3440, 09-3441, 2010 WL 3613821, at *5 n.6 (D. Minn. Sept. 7, 2010) (finding a letter that is mailed but never received is not a "communication" under the FDCPA); *cf. Hicks v. America's Recovery Solutions, LLC*, 816 F. Supp. 2d 509, 513 (N.D. Ohio 2011) (finding that hanging up without leaving a voice message is not a deceptive practice under the FDCPA); *Koby v. ARS Nat. Servs., Inc.*, No. CIV. 09CV0780 JAHJMA, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) (finding that message left for plaintiff, which merely included the caller's name and asked for a return call, did not convey, directly or indirectly, any information regarding the debt owed, and would not permit recovery under § 1692e(11)).  *But cf. Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1350 (N.D. Ga. 2008) (noting that a majority of courts have held that a phone message referencing an "important matter" or similar language may be considered a "communication" under the FDCPA), *aff'd on other grounds*, 584 F.3d 1350 (11th Cir. 2009).

On the other hand, other district courts around the country have adopted a more far-reaching interpretation of "communication." *E.g.*, *Belin v. Litton Loan Servicing, LP*, No. 8:06-cv-760-T-24, 2006 WL 1992410, at *4 (M.D. Fla. July 14, 2006) (holding that voicemail messages were communications because they indirectly conveyed information about a debt as purpose of the messages was to get debtor to return the call to discuss the debt); *West v. Nationwide Credit, Inc.,* 998 F. Supp. 642, 644-45 (W.D.N.C. 1998) (holding that a message left with a third party that identified call as about a "very important" matter was a communication in violation of § 1692c(b), even though message did not reference a debt or that the caller was a debt collector); *see also Thomas v. Consumer Adjustment Co.,* 579 F. Supp. 2d 1290, 1296-97 (E.D. Mo. 2008) (finding that a telephone number left for the consumer to return debt collector's call sufficient to constitute a communication and violation of § 1692c(b)).[5]

---

[5]   Indeed, several courts in this circuit and elsewhere generally have interpreted "communication" under § 1692a(2) in a broad manner, often adopting the reasoning of the district court in *Foti v. NCO Fin. Sys., Inc.*:

> [T]he FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, *and not just when the debt collector discloses specific information about the particular debt being collected*.  Indeed, a narrow reading of the term 'communication' to exclude instances . . . where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors [*sic*] to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold 'communication' requirement, merely by not conveying specific information about the debt . . . Such a [narrow] reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses.

424 F. Supp. 2d 643, 657-58 (S.D.N.Y. 2006); *accord Krug v. Focus Receivables Mgmt., LLC*, No. CIV.A.094310JEIAMD, 2010 WL 1875533, at *2 (D.N.J. May 11, 2010) ("The Court agrees with the *Foti* decision . . . ."); *Nicholas v. CMRE Fin. Servs., Inc.*, No. CIVA 08-CV-4857 (DMC, 2010 WL 1049935, at *3-4 (D.N.J. Mar. 16, 2010); *Inman v.*

Here, the record discloses that Plaintiffs initially did not know who Portfolio was or why Portfolio was calling Plaintiffs.  *See, e.g.*, Dep. of Alma Rush, 12:2-8 ("Q: [D]o you know who Portfolio Recovery Associates was calling when it was calling your house?  A: No, I don't.  Q: So you don't know if they were calling for you?  A: No."); *id.* at 9:5-6 ("Q: Do you know why [Portfolio] was calling you?  A: No.").  Indeed, Plaintiff Alma Rush testified that she never answered any phone calls from Portfolio because it is her practice not to answer phone calls from any person or entity she does not know.  *See id.* at 35:12-18 ("Q: All right. But you said you never answered when [Portfolio] called.  A: No, no. Q: Did you—is there any reason why you didn't answer?  A: If I don't know who the phone number is when they call, I don't answer it."); *id.* 35:19-36:10 (same, explaining that unknown phone calls are never answered).  Similarly, in an affidavit submitted in opposition to Portfolio's summary judgment motion, Plaintiff Alma Rush avers that "Portfolio never disclosed the origin or the nature of the alleged debt to us during their calls," and that it was only subsequent to the filing of the Complaint that Plaintiffs learned about the specific debt that Portfolio had been attempting to recover.[6]  *See* Pl. Opp., Ex. A (Aff. of Alma Rush), ¶ 5.

---

*NCO Fin. Sys., Inc.*, No. CIV.A. 08-5866, 2009 WL 3415281, at *3 (E.D. Pa. Oct. 21, 2009) ("This Court finds the *Foti* decision to be highly instructive, and therefore adopts its reasoning . . . ."); *Wideman v. Monterey Fin. Servs., Inc.*, No. CIV.A. 08-1331, 2009 WL 1292830, at *2 (W.D. Pa. May 7, 2009) (citing, among other authorities, *Foti*).

While cognizant of these decisions, I nevertheless am persuaded that under the facts here, for the reasons explained above, neither *Foti* nor these other cases instruct that all unanswered phone calls must categorically be considered "communications" under the FDCPA.

[6]     In his deposition testimony, Plaintiff Gregory Rush explained that he too did not know anything about Portfolio, but that he only knew them to be a debt collector based on from his wife telling him so.  Dep. of Gregory Rush at 26:17-21 ("Q: How did you know they were a collection agency?  A: She told me.  Q: Your wife told you?  A: Yes.").  Although there are potential hearsay issues with these statements, they suggest that at

On the other hand, the undisputed facts show that (1) Plaintiffs retained counsel at some point in January 2012 in connection with these phones calls, and (2) Plaintiffs' counsel sent a cease and desist letter to Portfolio on January 26, 2012, demanding that Portfolio "not contact [Plaintiffs] for any reason," including "with respect to the collection or attempted collection of any debt." *See* Compl., Ex. A (Jan. 26, 2012 cease and desist letter). Thus, taking the facts and drawing inferences in favor of the non-moving party, Plaintiffs knew that, at least from the time of the January 26, 2012 cease and desist letter, Portfolio was a debt collector.[7] Similarly, it can also be reasonably inferred that at that point Plaintiffs knew that Portfolio, as a debt collector, was calling Plaintiffs with respect to a debt. *See Cerrato*, 909 F. Supp. 2d at 145.

In light of these facts, the Court makes two findings. First, the phone calls that occurred before Plaintiffs hired counsel and sent Portfolio the January 26, 2012 cease and desist letter are more like those in *Wilfong*. Nothing in the record demonstrates that, before the end of January 2012, Plaintiffs ever discerned from the unanswered phone calls that Portfolio was attempting to deliver a message to them regarding a debt owed by Plaintiffs. Indeed, nothing in the record reveals that, prior to retaining counsel, Plaintiffs were even aware that Portfolio was a debt collector. The mere fact that Portfolio's phone number and a portion of its name appeared on Plaintiffs' caller ID is insufficient under the facts of this case to transform these phone calls into communications under the

---

some point Plaintiffs became aware that Portfolio was a debt collector calling about a debt. *See* 909 F. Supp. at 145.

[7]     Plaintiffs do not recall, or offer any evidence, as to the exact date they retained counsel in January 2012. Viewing the evidence favorably to Plaintiffs, I find it reasonable to use the January 26, 2012 date that Plaintiffs' counsel sent the first cease and desist letter as the date to infer when Plaintiffs became aware that Portfolio was a debt collector.

FDCPA because "[n]o information regarding a debt was conveyed directly or indirectly to [Plaintiffs]."[8]  *Wilfong*, 2011 WL 2678925, at *4; *see also* 15 U.S.C. § 1692a(2).  And therefore summary judgment is granted as to Plaintiffs' claims under § 1692c(a)(1)-(2) & (c) for any phone call occurring prior to the January 26, 2012 cease and desist letter.

Second, with respect to those unanswered phone calls that occurred after Plaintiffs retained counsel, I find that, like in *Cerrato*, the record shows, directly or inferential, that Plaintiffs understood these calls to be from a debt collector seeking to convey information about a debt.  *See Cerrato*, 909 F. Supp. 2d at 145 ("The calls conveyed to Cerrato (1) who was calling because Solomon's name appeared on her caller ID display, and (2) why Solomon was calling—to collect her debts—because that was (a) the purpose of the myriad calls she received prior to her cease and desist letter, and (b) Solomon's role as a debt collector.").  Plaintiffs knew who was calling them from their caller ID system, despite the fact that the phone calls went unanswered and Portfolio never left any voicemails.  Additionally, on the facts in this case, it can be reasonably inferred that the reason Plaintiffs retained counsel and had a cease and desist letter sent to Portfolio was because Plaintiffs at some point understood Portfolio to be a debt collector calling about a debt.  In this manner, the phone calls that occurred after Plaintiffs retained

---

[8]      I note that Plaintiffs argue that if unanswered phone calls are not considered communications, a significant loophole is created wherein debt collectors may place repeated phone calls to an individual and then, by hanging up without leaving any message, avoid liability under the FDCPA.  Plaintiffs' argument is misplaced, however, as the FDCPA expressly contains provisions to prevent debt collectors from engaging in harassing or annoying conduct, without any requirement of a communication regarding a debt.  *See* 15 U.S.C. § 1692d.         For the same reason, I am satisfied that my interpretation of "communication" with respect to these phone calls is not so narrow as to undermine the precept that the FDCPA is a remedial statue to be construed broadly.  *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute . . . we construe its language broadly, so as to effect its purpose." (Citation omitted.)).

counsel are properly considered communications because they indirectly conveyed to Plaintiffs "information regarding a debt." *See* 15 U.S.C. § 1692a(2); *Cerrato*, 909 F. Supp. 2d at 149.   Accordingly, I turn next to analyzing Plaintiffs' claims under § 1692c(a)(1)-(2) & (c) only with regard to unanswered phone calls that allegedly occurred after Plaintiffs' January 26, 2012 cease and desist letter.

2.      Inconvenient communications under § 1692c(a)(1)

Under the FDCPA, without the consent of the consumer or a court, a debt collector may not "communicate with a consumer in connection with the collection of any debt":

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.   In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location

15 U.S.C. § 1692c(a)(1).

In the present case, Portfolio's motion for summary judgment will be denied with respect to § 1692c(a)(1) if Plaintiffs can point to instances of receiving phone calls before 8:00 am.[9]   In that connection I note that although it may seem that *any* phone call at an inconvenient time would trigger a § 1692c(a)(1) claim, the plain language of the statute speaks only in terms of inconvenient "communications."   Thus, in light of how I have defined communications in this case, *see supra* Part III.A.1, I review the record to

---

[9]      Although § 1692c(a)(1) speaks in terms of an "inconvenient" time, Plaintiffs have not provided any explanation of what they considered inconvenient; instead they rely on the statutory presumption that convenient times are between 8:00 am and 9:00 pm.  *See* 15 U.S.C. § 1692c(a)(1).   Moreover, Plaintiffs' only basis for their claim under § 1692c(a)(1) is that they received calls in the morning at or before 8:00 am, and not at any time after 9:00pm.

determine if Plaintiffs have provided sufficient evidence to show that Portfolio called prior to 8:00 am following the January 26, 2012 cease and desist letter.[10]

Plaintiffs argue that summary judgment should be denied because Portfolio placed phone calls to Plaintiffs before 8:00 am on several occasions.  The record, however is devoid of any specific testimony or other evidence that these early morning phone calls occurred *after* Plaintiffs retained counsel, and thus learned that Portfolio was a debt collector calling Plaintiff to convey information about a debt.  Portfolio's call logs show only one call after January 26, 2012, which occurred on January 30, 2012, at around 1:00 pm.  *See* Def. Br., Decl. of Nyetta C. Jackson at Ex. A.  Moreover, although Plaintiffs dispute the accuracy of the call logs based on their recollection of having received other calls on dates and times not listed in the logs, neither Plaintiff provided testimony or other evidence that they received phone calls before 8:00 am anytime after the January 26 letter.  Review of Plaintiff Alma Rush's deposition testimony reveals only the following with respect to early morning phone calls: (1) she received one phone call at exactly 8:00 am on January 24, 2012, and (2) received other phone calls prior to 8:00 am on other days.  *See* Dep. of Alma Rush, 27:18-28:13 (call at 8:00 am); *id.* at 29:3-30:4 (testifying that other phone calls occurred around 7:30 am, but could not recall any specific date or if they occurred after retaining counsel).  Indeed, in her affidavit submitted in opposition to Portfolio's summary judgment motion, Plaintiff Alma Rush avers to no phone calls occurring before 8:00 am or after 9:00 pm following Plaintiffs' retention of counsel, although she does aver to receiving specific phone calls at other, normal, times on

---

[10]    I note however that the other unanswered phone calls occurring before the January 26, 2012 letter may be relevant to Plaintiffs' claims under § 1692d & d(5), which has no communication requirement.  *See infra* Part III.B.

January 25, 26, and February 1, 2012.  *See* Aff. of Alma Rush at ¶¶ 3-4.  Similarly, Plaintiff Gregory Rush testified that he only recalled phone calls on Sundays, beginning around 9:00 am, and weeknights after he got home from work around 6:00 pm.  *See* Dep. of Gregory Rush, 10:17-20, 11:3-9, 19:11-20, 24:2-6; *see also id.* at 22:18-21 (testifying that he could not recall receiving any phone call on Sunday before 9:00 am).

Based on the above, I find that Plaintiffs have failed to provide anything other than speculation that they received phone calls from Portfolio at any inconvenient time after they retained counsel.  Given that Plaintiffs must put forth more than a "mere scintilla" of non-speculative evidence to defeat Portfolio's motion for summary judgment, I grant Portfolio's motion with respect to § 1692c(a)(1).  *See Matsushita*, 475 U.S. at 586.

3.      Communications after the cease and desist letter under § 1692c(a)(2) & (c)

Under the FDCPA, a debt collector may not "communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of . . . such attorney's name and address."  15 U.S.C. § 1692c(a)(2).  The FDCPA further provides, subject to exceptions not relevant here, that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt."  *Id.* § 1692c(c).  Thus, with respect to Plaintiffs' § 1692c(a)(2) & (c) claims, Portfolio's motion will be

denied if the record reveals any calls made after Portfolio knew of the January 26, 2012 cease and desist letter.[11]

Plaintiffs first argue that their § 1692c(a)(2) & (c) claims must be analyzed from the date postal records show the cease and desist letter was delivered to Portfolio's office, which Plaintiffs contend occurred at 10:48 am on January 30, 2012.  *See* Compl., Ex. C. Portfolio's call log, however, reflects that it actually received and logged the cease and desist letter on January 31, 2012.  *See* Def. Br., Decl. of Nyetta C. Jackson at Ex. A.  In that connection, Portfolio objects to Plaintiffs' reliance on the postal service delivery confirmation document, arguing that Plaintiffs have failed to show how such a business record is admissible evidence.

The date and timing of receipt matters because although Portfolio's logs show no calls being placed to Plaintiffs after January 31, they do show a call placed around 1:00pm on January 30.  Nevertheless, I need not determine on this summary judgment motion whether the January 30 call is sufficient to defeat Portfolio's motion under § 1692c(a)(2) or (c), or whether Plaintiffs' evidence of delivery would be admissible at trial, because Plaintiffs rely on other calls allegedly made after Portfolio acknowledged receipt of the cease and desist letter and recorded it in Plaintiffs' account on January 31, 2012.  Plaintiff Alma Rush testified that they continued to receive phone calls from Portfolio after January 2012, though April 2012.[12]  *See, e.g.*, Dep. of Alma Rush at 26:9-

---

[11]    The January 26, 2012 cease and desist letter informed Portfolio both that further communication with Plaintiffs should only occur through counsel, *see* 15 U.S.C. § 1692c(a)(2), and demanded that Portfolio cease all communications with Plaintiffs.  *See id.* at § 1692c(c).

[12]    I note that the fact that Plaintiffs' counsel sent Portfolio a second cease and desist letter in April 2012, *see* Def. Opp., Ex. E., makes it possible also to draw a reasonable

14 (testifying that she recalled calls being made in February 2012); Aff. of Alma Rush at ¶ 4 (averring to two phone calls on February 1, 2012).   In other words, Plaintiffs challenge the accuracy of Portfolio's phone logs, which in turn raises credibility issues normally sufficient to defeat Portfolio's motion for summary judgment.  *See Big Apple BMW*, 974 F.2d at 1363 (summary judgment must be denied where conflicting material evidence exists).

Nevertheless, Portfolio contends that, should the Court find that Portfolio communicated with Plaintiffs after receipt of the January 26, 2012 cease and desist letter, Portfolio is entitled to a bona fide error defense, pursuant to 15 U.S.C. § 1692k(c), and thus summary judgment should be granted with respect to Plaintiffs' claims under § 1692c(a)(2) or (c).[13]  Specifically, Portfolio argues that even assuming it communicated with Plaintiffs after January 30, 2012, any communications were unintentional, the result of errors, and contrary to established procedures Portfolio has designed to avoid such errors.

Section 1692k(c) of the FDCPA offers a defense to a debt collector whose violation results from a bona fide error, providing that:

> A debt collector may not be liable in any action under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

*Id.* at § 1692k(c).   The Third Circuit has established a three-part test that the debt collector must satisfy in order to avail itself of the bona error defense: "(1) the alleged

---

inference that Portfolio continued to call after the January 26, 2012 cease and desist letter.

[13]    Portfolio has only asserted a bona fide error defense in connection with Plaintiffs' three claims under § 1692c; I therefore limit my application of the defense accordingly.

violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297-98 (3d Cir. 2006).  Portfolio claims it satisfies all three of these prongs because any communications that occurred after receipt of the January 26, 2012 cease and desist letter were unintentional, the result of an error, and happened despite Portfolio having procedures in place to prevent its employees from communicating with consumers after the receipt of such a letter.  In challenging the application of the defense in this case, Plaintiffs focus solely on the third prong, *i.e.*, that Portfolio maintained adequate procedures to prevent communications after the receipt of Plaintiff's letter.  *See* Pl. Opp., 17-20.  Because Plaintiffs do not challenge whether these alleged communications were unintentional, and because Portfolio submits that any violation of this case was unintentional, I find that Portfolio satisfied the first prong of the bona fide error defense.[14]  *Accord Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 467 (E.D. Pa. 2008) ("The defendants deny intentionally violating the FDCPA, and Richburg does not directly contest this part of the defense. Instead, the focus of their arguments is on the second and third prongs of the defense, which we turn to now.").

"The second and third prongs of the [bona fide error] defense are objective and require an inquiry into whether any precautions were actually implemented, and whether

---

[14]      In that connection, while the Third Circuit has not directly addressed the issue, I note that district courts in this circuit, as well as other circuit courts, focus their intent inquiry on whether the debt collector intended to violate the FDCPA, not whether it intended to communicate, or attempted to communicate. *Regan v. Law Offices of Edwin A. Abrahamsen & Associates*, P.C., No. CIV.A. 08-5923, 2009 WL 4396299, at *7 (E.D. Pa. Dec. 1, 2009); *see, e.g.*, *Johnson v. Riddle*, 443 F.3d 723, 728 (10th Cir. 2006) ("[T]he only workable interpretation of the intent prong of the FDCPA's bona fide error defense is that a debt collector must show that the violation was unintentional, not that the underlying act itself was unintentional."); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005) (same).

such precautions 'were reasonably adapted to avoid the specific error at issue.'" *Agostino v. Quest Diagnostics, Inc.*, No. CIV.A. 04-4362 SRC, 2011 WL 5410667 (D.N.J. Nov. 3, 2011) (quoting *Johnson v. Riddle*, 443 F.3d 723, 728-29 (10th Cir. 2006)).  In support of its defense, Portfolio offers a declaration from its designated corporate agent attesting to the procedures in place designed to avoid FDCPA violations.  Def. Br., Decl. of Nyetta C. Jackson.  Through this declaration, Portfolio explains that its employees are trained upon hiring to ensure compliance with the FDCPA, and are provided with a training manual and the text of the FDCPA.  *Id.* ¶¶ 24-27.  As part of this training, Portfolio employees are instructed not to call a consumer following receipt of an attorney representation and/or cease and desist letter.  *Id.* at ¶ 27.  Employees are tested on their FDCPA and internal policy and procedures knowledge following the completion of their training, and are retested annually; in addition, employees participate in weekly meetings that discuss any new developments in Portfolio's policies or the FDCPA.  *Id.* at ¶¶ 28-30, 32.  Specifically in this case, Portfolio states that it processed Plaintiffs' cease and desist letter and, consistent with internal policies, logged the letter along with a do-not-call code in Plaintiffs' account.  *Id.* at ¶¶ 40-43.  Portfolio asserts that once this code is entered, its policies and procedures and its own account system prohibit further calls from being made.  *Id.* at ¶¶ 44-45.

Plaintiffs in opposition contend that Portfolio has failed to carry its burden of showing that its policies and procedures were reasonably and sufficiently adapted to preventing inadvertent communications following the receipt of their cease and desist letter.  According to Plaintiffs, Portfolio's declaration is devoid of any detailed

explanation of the policies and procedures it employs, as well as any evidence that they were actually employed in this case.

"[T]he bona fide error defense 'does not require debt collectors to take every conceivable precaution to avoid errors,' but rather 'requires reasonable precaution.'" *Beck v. Maximus, Inc.*, 457 F.3d at 299 (quoting *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 539 (7th Cir. 2005)); *see also Agostino v. Quest Diagnostics, Inc.*, 2011 WL 5410667 (denying summary judgment on record devoid of any specificity regarding what industry accepted procedures actually are, or how they are reasonably adapted to avoid the specific error at issue).  In this case, I am persuaded that Portfolio has shown that it had reasonable precautions in place to avoid making the alleged phone calls that occurred after receipt of Plaintiffs' cease and desist letter.  Portfolio has submitted evidence that its employees are trained, and regularly retrained, on the FDCPA, including the prohibition on communicating with consumers after receiving an attorney representation or cease and desist letter.  Portfolio's evidence also explains the process for receiving, reviewing, and logging these letters into a consumer's account, and how its own system, consistent with its policies and procedures, prevents calls from being made after such a letter.  I find that these procedures are objectively reasonable, and speak directly to the alleged FDCPA violations in this case.  *See Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 389 (D. Del. 1991) (finding similar evidence sufficient for bona fide error defense on summary judgment).  Although Plaintiffs argue that this evidence is insufficient, I note that Portfolio only has to prove its entitlement to the defense by a preponderance of the evidence, and, further, that the law only requires "reasonable" precautions.  *See Beck*, 457 F.3d at 299; *see also Hyman v. Tate,* 362 F.3d

965, 968 (7th Cir. 2004) (finding that debt collector could have done more to prevent the specific error, but allowing bona fide error defense because "§ 1692k(c) only requires collectors to adopt reasonable procedures" to avoid errors under FDCPA).

Portfolio has met its burden by supplying evidence of its procedures, and Plaintiffs have failed to rebut the adequacy or reasonableness of such procedures to show that summary judgment is inappropriate; indeed, Plaintiffs neither have pointed to nor have submitted any testimony, declaration, or expert opinion to create a genuine dispute that Portfolio's procedures are insufficient to support a bona fide error defense.[15] Accordingly, I conclude that Portfolio is entitled to summary judgment in its favor on its bona fide error defense under § 1692k(c), shielding Portfolio from liability for Plaintiffs' § 1692c(a)(2) and (c) claims.

**B.      FDCPA Claims Under §§ 1692d & 1692d(5).**

Portfolio also moves for summary judgment on Counts Four and Five of the Complaint, in which Plaintiffs allege, in Count Four, that Portfolio engaged in "harassing, oppressing, or abusing" conduct, *see* 15 U.S.C. § 1692d, and, in Count Five, that Portfolio caused Plaintiffs' telephone to ring "repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *Id.* § 1692d(5).[16]  Portfolio

---

[15]      Plaintiffs, in a sentence, also argue that "even if the Court were to accept that such procedures were in place, it does not explain how multiple calls could have been placed to Plaintiffs despite these policies." Pl. Opp., 18.  The Court determines that because Portfolio has adequately established it maintains policies and procedures in place to prevent calls after a cease and desist letter—and because Plaintiffs have not argued that Portfolio intended to violate the FDCPA—any such calls would necessarily be in error, *e.g.*, from a computer glitch or human error.

[16]      Section 1692d prohibits a debt collector from harassing, oppressing, or abusing any person in connection with the collection of a debt.  *See* 15 U.S.C. § 1692d.  The types of conduct that would amount to a violation of that section, including subsection (5), include:

contends that summary judgment is proper because, as a matter of law, its conduct did not violate any part of § 1692d, including § 1692d(5).  As previously noted, the only conduct at issue here is unanswered phone calls placed to Plaintiffs' home phone number over a series of months.  Thus, both Plaintiffs' § 1692d and § 1692d(5) claims turn solely on these phone calls and not any other conduct; moreover, with respect to § 1692d(5), because it is undisputed that Plaintiffs never spoke to anyone from Portfolio, I focus only on whether Portfolio violated that section by "causing a telephone to ring."

Portfolio argues that Plaintiffs' claims fail because "without other evidence, placing a call to collect a debt does not have the natural consequence of harassing, annoying or oppressing a person."  Def. Br., 14.  Similarly, Defendants assert that no reasonable jury could find that Portfolio had the intent to "annoy, abuse, or harass" Plaintiffs based on the number and timing of calls as reflected in Portfolio's phone logs.  *Id*

The question of whether a debt collector engages in "harassing, annoying, or abusive" conduct is ordinarily an issue of fact for the jury.  *Derricotte v. Pressler &*

---

(1) The use of threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.*

*Pressler, LLP*, No. 10-CV 1323, 2011 WL 2971540, at *3 (D.N.J. 2011); *Regan v. Law Offices of Edwin A. Abrahamsen & Associates, P.C.*, No. 08-CV-5923, 2009 WL 4396299, at *6 (E.D. Pa. 2009). Therefore, courts will usually only grant summary judgment on this question if "the conduct at issue *unequivocally* has—or does not have— the natural consequence of harassing, oppressing, or abusing the consumer as a matter of law." *Regan,* 2009 WL 4396299, *6 (emphasis added); *Derricotte*, 2011 WL 2971540, at *3.  Put differently, a court must deny a motion for summary judgment if it is determined that a reasonable juror could find for the nonmoving party.  *Illes v. Beaven*, No. 12-CV-395, 2012 WL 2836581, at *2 (M.D. Pa. 2012).  The same is true for the question of a debt collector's intent to annoy, abuse, or harass under § 1692d(5).  *Hendricks v. CBE Group, Inc.*, 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012) (applying "no reasonable juror" standard); *Holland v. Bureau of Collection Recovery*, 801 F. Supp. 2d. 1340, 1342-43 (M.D. Fla. 2011) ("numerous courts have held that such intent is a question of fact for the jury"); *Chavious v. CBE Group, Inc.*, No. 10-CV-1293, 2012 WL 113509, at *2 (E.D.N.Y. 2012) (caller's intent is question for jury).

Here, Portfolio's argument focuses on the fact that its records show only 39 unanswered phone calls that were placed to Plaintiffs over a one-year period, with only a handful of those calls falling between December 2011 and April 2012, and points to cases in which courts have found an even higher volume of calls to be insufficient to sustain a claim under § 1692d.[17]  Plaintiffs, however, dispute the number, frequency, and timing of the phone calls, and thus the accuracy of Portfolio's call log.

---

[17]     As one district court recently observed:

A remarkable volume of telephone calls is permissible under FDCPA jurisprudence. *See VanHorn v. Genpact Servs., LLC*, No. 09-1047-CV-S-

For example, although not documented in Portfolio's records, Plaintiff Alma Rush

testified in deposition that she was still receiving calls from Portfolio in February 2012,

after Portfolio had knowledge of Plaintiffs' retention of counsel:

> Q.    Was there any other dates and times of calls . . . ?
> A.    Yes. My husband was back in the hospital in February. And I don't
> recall the exact dates, but he was in for the same thing in February. And I
> was still receiving calls from them.

Dep. of Alma Rush at 26:9-14.  Plaintiff Alma Rush further testified that she received at

least one call at or before 8:00 am, which also does not appear in Portfolio's records:

> Q.    Okay. Were there any other times—well, were there any times that
> you know of where they called you before 8:00 a.m.?
> A.    There may have been times, but I just don't remember any specific
> dates . . . .
> . . .
> A.    Well, yes, there were times they would call me before 8:00 a.m.
> Q.    And how do you know that?
> A.    My Caller ID.
> Q.    Well, the Caller ID is how you know that it was Portfolio.
> A.    It tells you what time.
> Q.    Okay. So were there calls that you received prior to 8:00 a.m. from
> Portfolio?
> A.    Yes.
> Q.    There were?
> A.    Yes.
> Q.    And do you remember when you received these calls?
> A.    Around 7:30 in the morning they would start.

---

GAF, 2011 WL 4565477, at *1 (W.D. Mo. Feb. 14, 2011) (finding 114
calls in a four-month period did not violate the FDCPA); *Carman v. CBE
Grp., Inc.*, 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (granting summary
judgment in favor of a defendant who placed 149 telephone calls to the
plaintiff during a two-month period); *Clingaman v. Certegy Payment
Recovery Servs.*, No. H-10-2483, 2011 WL 2078629, at *5 (S.D. Tex.
May 26, 2011) (granting summary judgment for a defendant who placed
55 phone calls over three and one-half months).

*Zortman v. J.C. Christensen & Associates, Inc.*, 870 F. Supp. 2d at 707.

*Id.* at 29:18-30:1.[18]

Likewise, Plaintiff Gregory Rush testified that Plaintiffs received calls on Sundays far more often than indicated by Portfolio's records.  Whereas Portfolio's call log only shows calls on three different Sundays in the year preceding the filing of Plaintiffs' Complaint, *see* Def. Br., Decl. of Nyetta C. Jackson at ¶ 35, Plaintiff Gregory Rush nonetheless testified in deposition to the contrary:

> Q:      Do you know—do you remember if they called you three or four times a day on any of the Sundays when you were home?
> A:      It used to happen more than once on a Sunday.  The first call was always around 9 o'clock in the morning, and then there would be another one before noon and afternoon, and sometimes early evening on a Sunday.
> Q:      But not necessarily every Sunday?
> A:      Just about every Sunday we got the morning call.

Dep. of Gregory Rush at 19:8-18.[19]

Finally, Plaintiff Alma Rush averred in her affidavit submitted in connection with Plaintiffs' opposition to the summary judgment motion six specific calls that she received, which were logged on her caller ID, on the following dates and times: January 25, 2012 at 12:30 pm; January 26, 2012 at 3:05 pm, 5:33 pm, and 8:21 pm; and February 1, 2012 at 9:40 am and 3:30 pm.  Aff. of Alma Rush at ¶ 4.  None of these calls are

---

[18]      Portfolio argues that Plaintiff Alma Rush's testimony is insufficient to defeat summary judgment because it is vague as to when these calls occurred, and Portfolio's own logs reflect only 39 calls, none of which were placed on the additional dates and time claimed by Plaintiffs.  *See* Def. Br. at 13; *see also* Dep. of Alma Rush at 29:23-25 (testifying that she could not recall exact dates of these calls).  Portfolio's argument is misplaced, however, because Plaintiffs testified that calls occurred beyond those listed in Portfolio's call long, even if Plaintiffs were unsure of the exact date and time of those calls.   At the summary judgment stage, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW*, 974 F.2d at 1363.

[19]      In that connection, Plaintiff Gregory Rush also testified that he did not work Sundays, and would spend most Sundays at home.  Dep. of Gregory Rush at 19:25-20:7.

included in Portfolio's call log.  *Compare id. with* Def. Br., Decl. of Nyetta C. Jackson,

Ex. A. (Portfolio call log).

Taken together, these assertions are enough to merit a genuine dispute of fact as

to the number, frequency, and timing of phone calls Portfolio made to Plaintiffs.[20]

Because a genuine dispute of fact exists, I cannot determine, as a matter of law, that

Portfolio's conduct unequivocally did not violate § 1692d(5).  *See Big Apple BMW*, 974

F.2d at 1363.  Instead, I find it appropriate in this case, like in most cases, that the

question of whether Portfolio's conduct harassed, oppressed, or abused Plaintiffs is a

question of fact for a jury to decide.[21]  *See Jeter v. Credit Bureau,* 760 F.2d 1168, 1179

(11th Cir. 1985); *Turner v. Prof'l Recovery Servs., Inc.*, No. CIV. 11-3356 JS, 2013 WL

3441100, at *2 (D.N.J. July 9, 2013) (denying summary judgment under similar facts

because "[t]he jury will have to decide whether to credit [the debt collector's] account

records or plaintiff's testimony").  Accordingly, summary judgment is denied with

respect to Counts Four and Five of Plaintiffs' Complaint.

---

[20]     As previously noted, although Portfolio argues that Plaintiffs' testimony is too vague and speculative to establish a genuine issue of fact, I am satisfied that Plaintiffs' repeated statements under oath that they regularly received phone calls from Portfolio, including through April 2012, suffice.  *See supra*, footnote 17.  Nevertheless, I note that, even if Plaintiffs prove the volume and frequency of the calls as they claim, it does not necessarily follow that Portfolio's conduct rises to the level necessary to violate § 1692d. Indeed, Plaintiffs' generally vague, and sometimes internally inconsistent, testimony, and the dearth of other evidence to support their claims, may well fall short of convincing a jury that a § 1692d violation occurred.  Furthermore, the Court is constrained to observe that Plaintiffs' recollection notably strengthened for dates following the retention of counsel.

[21]     For this reason, I do not address whether, as Plaintiffs argue, the "least sophisticated debtor" standard applies to analyzing Plaintiffs' claims under § 1692d & d(5).  However, I note that the Third Circuit has held that the least sophisticated debtor standard applies to "any lender-debtor *communications* potentially giving rise to claims under the FDCPA."  *Brown v. Card Serv. Ctr.*, 464 F.3d at 454 (emphasis added). Because § 1692d does not require any communication, as defined under the FDCPA, application of that standard to § 1692d seems unlikely, and indeed, unworkable.

**C.      FDCPA Claims Under § 1692f.**

Portfolio moves for summary judgment on Plaintiffs' final FDCPA claim, in Count Six, that Portfolio violated § 1692f of the FDCPA.  Under § 1692f, a debt collector is prohibited from using unfair or unconscionable means to collect a debt.[22]  *See Huertas*

---

[22]      Section 1692f provides a  non-exhaustive list of the types of conduct prohibited by the FDCPA:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
> (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
> (3) The solicitation by a debt collector or any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
> (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.
> (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>> (B) there is no present intention to take possession of the property; or
>> (C) the property is exempt by law from such dispossession or disablement.
> (7) Communicating with a consumer regarding a debt by post card.
> (8) Using any language or symbol, other than the debt collector's address, or any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1682f; *see also Safdieh v. AFNI, Inc.*, No. CIV.A. 13-00343 FLW, 2013 WL 3786307, *2-*3 (D.N.J. July 18, 2013).

*v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011).  In that regard, § 1692f is considered to be a catch-all provision for conduct that is unfair but is not specifically identified in any other section of the FDCPA.  *Williams v. Zucker, Goldberg & Ackerman, LLC*, No. 09-6177, 2011 WL 843943, at *1 n.1 (D.N.J. Mar. 8, 2011).  Courts have therefore determined that § 1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA, *Turner,* 2013 WL 3441100, at *6, and routinely dismiss § 1692f claims when a plaintiff "does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA."  *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 656 (E.D. Pa. Nov. 28, 2012) (quoting *Shand-Pistilli v. Prof'l Account Serv., Inc.*, No. 10-CV-1808, 2010 WL 2978029, at *6 (E.D. Pa. July 26, 2010)).

Here, Plaintiffs' § 1692 claim is premised on the same conduct complained of in Plaintiffs' other claims under the FDCPA—the unanswered phone calls.  Plaintiffs do not point to any instance where Portfolio engaged in one of the practices identified in § 1692f(1)-(8), or allege any conduct other than that related to their other claims.  *See* Pl.'s Opp., 22.  Indeed, in their opposition, Plaintiffs do not even meaningfully respond to Portfolio's argument that there is no basis for the § 1692f claim.  For these reasons, the Court grants Portfolio's motion for summary judgment as to Count Six.  *See Corson v. Accounts Receivable Mgmt., Inc.*, No. CIV.A. 13-01903 JEI, 2013 WL 4047577, at *7-*8 (D.N.J. Aug. 9, 2013).

### D.    Plaintiffs' State Law Invasion of Privacy Claim

Lastly Plaintiffs allege in Count Seven a cause of action for invasion of privacy premised on Portfolio's unreasonable intrusion on their seclusion.  Specifically, Plaintiffs

argue that the volume and timing of Portfolio's calls were unreasonable and violated their privacy.  *See* Pl. Opp., 23.  Portfolio moves for summary judgment, contending that as a matter of law its conduct was not "highly offensive to a reasonable person," and the calls were not a "substantial burden" to Plaintiffs.  *See* Def. Br., 28.

Several causes of actions in common law arise from the right to privacy, including for intrusion on seclusion.  *N.O.C., Inc. v. Schaefer,* 197 N.J. Super. 249, 254 (Law Div. 1984) ("[T]he right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.").  In recognizing intrusion on seclusion as a cognizable claim, New Jersey has adopted the definition of the Restatement (Second) of Torts:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts 625B (1977) (hereinafter, "Reinstatement"); *see also Bisbee v. John C. Conover Agency, Inc.*, 186 N.J. Super. 335 (App. Div. 1982); *Castro v. NYT Television*, 384 N.J. Super. 601 (App. Div. 2006).  At the crux of an intrusion claim is an allegation that a plaintiff's personal and private affairs have been pried into by the defendant.  *Swift v. United Food Commercial Workers Union Local 56,* No. L-2428-06, 2008 WL 2696174, at *3 (N.J. Super. A.D. July 11, 2008).

In addition, a plaintiff "must establish that the intrusion 'would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.'"[23] *Ventura v. I.C. Sys., Inc.*, No. CIV.A. 11-5396 JLL, 2011

---

[23]     Thus, unlike a claim brought under § 1692d of the FDCPA, an intrusion on seclusion claim requires a showing of conduct *more offensive* than that which merely

WL 5519863, at *3 (D.N.J. Nov. 9, 2011) (quoting *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 316 (2010)). Such a determination turns on an objective and reasonable expectation of privacy with respect to the item or area searched or intruded upon. *White,* 344 N.J. Super. at 222; *see also State v. Hempele,* 120 N.J. 182, 200 (1990) (holding that "expectations of privacy are established by general social norms"). Thus, notwithstanding a plaintiff's subjective expectations of privacy, a court must objectively determine whether, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy. *White,* 344 N.J. Super. at 222.

With regard to debt collection, including claims premised on facts similar to those here, the Restatement commentary provides:

> [T]here is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement § 652B, cmt. d (1977); *see Tamayo v. Am. Coradious Int'l, L.L.C.*, No. CIV.A. 11-6549 JLL, 2011 WL 6887869 at *4 (D.N.J. Dec. 28, 2011). Thus, the Restatement's illustration provides that mere calls from a debtor collector—without noted repetition or frequency—will not constitute an invasion of privacy:

> A, a landlord, calls upon B, his tenant, at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that B is not ready to pay it and

---

annoys, abuses, or harasses. *Stuart v. AR Res., Inc.*, No. CIV.A. 10-3520, 2011 WL 904167, at *6 (E.D. Pa. Mar. 16, 2011) (applying Pennsylvania common law, which is virtually identical to New Jersey common law, and finding that "[w]hile Plaintiff's allegations may be enough to state a plausible claim under the FDCPA, they are not sufficient to support a claim for invasion of privacy"). For that reason, the fact that Plaintiffs' claims under § 1692d survive Portfolio's summary judgment motion does not necessarily mean that Plaintiffs have a viable intrusion on seclusion claim.

that B objects to such a visit on Sunday. B is seriously annoyed. *This is not an invasion of B's privacy.*

Restatement § 652B, cmt. d (Illustration 8) (emphasis added).

Like the other claims in the Complaint, Plaintiffs' claim of "highly offensive" conduct turns solely on unanswered phone calls from Portfolio—specifically, that these calls caused Plaintiffs' home phone to ring and Portfolio's number and partial name to appear on Plaintiffs' caller ID.   As previously noted, the parties dispute the number, frequency, and timing of the phone calls in this case.  Portfolio submits that it called Plaintiffs' home a total of 39 times over a one-year period, and never at inconvenient times. *See* Def. Br., Decl. of Nyetta C. Jackson, Ex. A. (Portfolio call log).  In contrast, Plaintiffs assert that "calls are missing from Defendant's account notes," and that Portfolio actually called Plaintiffs at times before 8:00 am, as well as up to "three to four times daily" on a few days between December 2011 and April 2012. *See* Pl. Opp., 23. According to Plaintiffs, the number and timing of these calls created a substantial burden on their existence. *Id.*  Nevertheless, it is undisputed that Plaintiffs never answered a phone call from Portfolio and Portfolio never left any messages with Plaintiffs or communicated with them in any other way.[24]

Cases in this circuit have held that a debt collector merely calling persistently does not by itself demonstrate a substantial burden on the recipient. *See, e.g.*, *Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 480 (E.D. Pa. 2007) ("The allegations of the Complaint suggest that Defendants' intrusion upon [Plaintiffs'] solitude was, from the perspective of a reasonable person, "highly offensive" not by virtue of the Defendant's intruding on their solitude repeatedly, but rather by virtue of the outrageous character of

---

[24]     I note further that the record does not reflect how often Plaintiffs were home to hear their phone ring.

the one intrusion described by Plaintiffs."); *Stuart v. AR Res., Inc.*, No. CIV.A. 10-3520, 2011 WL 904167, at *6 (E.D. Pa. Mar. 16, 2011) (dismissing invasion of privacy claim despite Plaintiff's allegations that debt collector called her persistently and used profane language).   Indeed, "[e]fforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy."   *Id.* (internal citations omitted).   Other courts have likewise adopted this rationale.   *See Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010) (dismissing claim of invasion of privacy even when debt collector called Plaintiffs 35-40 times, up to six times per day, over a three month period because "those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion").   Thus, courts permit invasion of privacy claims only where the facts clearly demonstrate outrageous, rather than annoying or upsetting, conduct.   *See, e.g.*, *Corson v. Accounts Receivable Mgmt., Inc.*, 2013 WL 4047577 (denying summary judgment because debt collector repeatedly called plaintiff *and* plaintiff personally told debt collector to stop calling him despite being informed repeatedly that the actual consumer was not available at his number); *Desmond v. Phillips & Cohen Associates, Ltd.*, 724 F. Supp. 2d 562 (W.D. Pa. 2010) (denying summary judgment on invasion of privacy claim when debt collector spoke to Plaintiff, left messages on Plaintiff's answering machine, and sent multiple letters).

Here, even assuming that Portfolio called Plaintiffs as often as Plaintiffs claim— *i.e.*, more often and at different times than is reflected in Portfolio's call log—the undisputed record shows that Plaintiffs found Portfolio's phone calls merely to be "irritating" and "annoying."   *See, e.g.*, Dep. of Alma Rush, 31:22-32:2 ("Q: [H]ow did

the calls, the fact that you were receiving the calls, how did that impact your life?  A: It was just aggravating to, you know, check the Caller ID and see that it was Portfolio all the time.  *It was just irritating, you know*." (Emphasis added.)); *id.* at 34:1, 34:7-8, 35:5-7 (all explaining that it was "just annoying" to have Portfolio call all the time; Dep. of Gregory Rush, 16:10-18 ("Q:  And how were the calls harassing?  A: It was just very annoying that the phone would ring . . . And every time the phone rang it was like, oh, boy.  And run to the phone and see Portfolio Recovery on the Caller ID.  And just, very, very annoying."); *id.* at 25:19-25 ("Q: And how were [the calls] offensive?  A: Just very annoying and harassing.  Q: Well, is it annoying or harassing or is it offensive?  A: *Just annoying and harassing.*  You know, it's my home phone.  I don't need people calling me that I don't wish to speak to." (Emphasis added.)).

Viewing the facts in the light most favorable to Plaintiffs, it is clear that Portfolio never engaged in the conduct that would be considered objectively outrageous.  For example, there is no claim that Portfolio called Plaintiffs during the middle of the night, or placed back-to-back phone calls that would have caused Plaintiffs' phone to ring incessantly.  And although Plaintiffs do claim that Portfolio continued to make calls even after Plaintiffs' counsel sent a cease and desist letter, that is the sum total of Plaintiffs' claim: that Portfolio made several calls which Plaintiffs did not answer.  There is no claim or evidence showing that Portfolio did anything to personally attack or insult Plaintiffs beyond causing their phone to ring.[25]  Indeed, Plaintiffs effectively concede in

---

[25]      Plaintiffs do contend, however, that they faced troubling family issues, including twice a scare with Plaintiff Gregory Rush's health, during the time Portfolio made calls to Plaintiffs.  Based on these personal circumstances, Plaintiffs argue that Portfolio's phone calls were offensive to Plaintiffs, and support their intrusion on seclusion claim.  Pl. Opp., 24.  However, as noted above, even in light of these sensitive personal and family

their deposition testimony that they considered the phone calls to be "just annoying" and "annoying and harassing," but never offensive.  Thus, even assuming for this issue that Portfolio made phone calls in the amount and frequency claimed by Plaintiffs, the Restatement and case law is clear that that persistent phone calls by a debt collector that only result in annoyance to a reasonable person cannot sustain an intrusion on seclusion claim.  Accordingly, I find that Portfolio's conduct is not highly offensive, and does not rise to the level of outrageousness, as is required for an intrusion on seclusion claim. Restatement § 652B, cmt. d (Illustration 8); *see Stuart v. AR Res., Inc.*, 2011 WL 904167 ("'[E]fforts to collect a debt may be annoying, embarrassing, and upsetting without rising to the level of an invasion of privacy.'" (quoting *Leahey v. Franklin Collection Serv., Inc.*, No. CIV.A. 09-00709, 2010 WL 5279831, at *4 (N.D. Ala. Feb.4, 2010)); *Vega v. United Recovery Systems,* No. 11–5995(SRC), 2012 WL 458468 at *5 (D.N.J. Feb. 9, 2012) ("Even assuming that [the debt collector] had actual knowledge that Plaintiff was represented by counsel . . . the contention that subsequent communications from [the debt collector] constituted a 'highly offensive' intrusion into Plaintiff's solitude or seclusion is, quite simply, frivolous.").  Portfolio's motion for summary judgment on Count VII is therefore granted.

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs have failed to raise a genuine issue on Counts One, Two, Three, Six, and Seven necessary to defeat summary

---

circumstances, Plaintiffs testified that the phone calls were nothing more than an annoyance.  Moreover, to the extent that Plaintiffs' subjective complaints conflict with those of a reasonable person, the Court is constrained to apply the objective standard to determine if there was a highly offensive breach of the individual's reasonable expectation of privacy; Plaintiffs' subjective or idiosyncratic expectations do not control. *See Stengart v. Loving Care Agency, Inc.*, 201 N.J. at 316 (objective standard applies).

judgment. Portfolio's motion is therefore granted as to those five counts. Portfolio's motion is denied with respect to Counts Four and Five, as Plaintiffs have raised a genuine issue of material fact that precludes granting summary judgment.

Date: October 17, 2013                      /s/ Freda L. Wolfson
                                            Hon. Freda L. Wolfson, U.S.D.J.